103 Ill. App.3d 1056 (1982)
432 N.E.2d 306
In re ORGANIZATION OF GREATER ALGONQUIN PARK DISTRICT.  (CITIZENS' COMMITTEE FOR A PARK DISTRICT et al., Petitioners-Appellants,
v.
THE VILLAGE OF LAKE IN THE HILLS, Respondent-Appellee.)
No. 81-969.
Illinois Appellate Court  Second District.
Opinion filed February 19, 1982.
*1057 Donald R. Brewer, of Douglas and Brewer, of Chicago, for appellants.
Richard G. Flood, and Richard Curran, both of Zukowski, Poper and Rogers, and Murray McGuire, of Franz and McGuire, both of Crystal Lake, for appellee.
Reversed and remanded.
JUSTICE REINHARD delivered the opinion of the court:
This appeal arises from the dismissal of a petition filed in the circuit court of McHenry County for organization of the Greater Algonquin Park District upon objections raised by several individuals, a municipal corporation, and a bank as trustee. We allowed an expedited appeal and on January 22, 1982, issued a brief decision reversing the trial court and finding the objections to the form of the petition to be without merit. We remanded with directions to the trial court to determine forthwith whether the boundaries as defined in the petition are reasonable, and if so, to place the question of the formation of the park district for submission to the voters on March 16, 1982. In this opinion we set forth the reasons for that decision.
The petition for formation of a park district was filed on November 4, 1981, in the circuit court of McHenry County. The petition consisted of 146 separate sheets signed by 618 residents of Algonquin, Illinois. The petitions set forth the legal description of the proposed park district and represented that the territory lies within McHenry County, closely approximates the community served by Algonquin, Illinois, and contains no territory contained in any other incorporated park district. Also filed with the petition was the affidavit of David Haraburda stating that on or about November 4, 1981, he caused notice of intention to file a petition for formation of the Greater Algonquin Park District to be published in The Cardunal Free Press, a newspaper of general circulation within the territory of the proposed park district. Attached to the affidavit was the actual notice of petition to form a new park district.
On November 18, 1981, a publisher's certificate was filed signed by the publisher of The Free Press.[1] The certificate stated that The Free *1058 Press is a triweekly, secular newspaper of general circulation regularly published in the city of Carpentersville, Kane County, Illinois. It further certified that the notice of petition for formation of the park district, a copy of which was attached to the certificate, was published in the newspaper on November 6, 1981. Another publisher's certificate, also filed on November 18, 1981, certified that notice of public hearing regarding the petition to form the park district was published in The Free Press on November 16, 1981.
On December 3, 4, 7, 9, and 10, 1981, various objections to the petition were filed respectively by the village of Lake in the Hills, Robert and Karen Boncosky, Home State Bank of Crystal Lake as trustee under trust number 2674 and its various beneficiaries, Raymond E. Plote, and Melvin L. Boncosky and William P. Caveny, praying that the petition be dismissed. Each objection set forth a statement of interest. The objection of the village of Lake in the Hills alleged that portions of the proposed park district are either already part of that village or in the process of being annexed. Other objections alleged ownership, either legal or beneficial, of certain real property located within the proposed park district. The nature of the objections of the village of Lake in the Hills, Robert and Karen Boncosky, and Home State Bank essentially were that the petitions did not contain a legally sufficient description of the proposed district and that the boundaries were not reasonable. The objection of Raymond Plote alleged, inter alia: that the petition violated section 2-3 of the Park District Code in that the petition was not accompanied by a request that the circuit judge set a date for public hearing and that the circuit judge did not set a date for public hearing; the petition violated section 28-3 of the Election Code in that it did not state the question of public policy to be submitted and the proper certification of signatures was not made; and that the publication of notices did not meet the requirements of Illinois law. The objection of Melvin L. Boncosky and William Caveny alleged inter alia: notice was insufficient in that it violated section 2-3 of the Park District Code since it was published in a Kane County newspaper; notice of publication violated section 2-2 of the Park District Code in various respects; and the petition was in violation of section 28-3 of the Election Code in that the statement at the bottom of the petition did not certify that it was signed by a registered voter.
A hearing set for December 7 was continued to December 10. No evidence was presented on December 10, and after listening to arguments of counsel, the trial judge dismissed the petition stating that "it is defective publication." The court below also denied petitioner's oral motion to strike certain of the objections for lack of legal standing to file objections to the petition.
*1059 Formation of a park district is governed by provisions of the Park District Code (Ill. Rev. Stat. 1979, ch. 105, par. 1-1 et seq.). Section 2-2 (Ill. Rev. Stat., 1980 Supp., ch. 105, par. 2-2) and section 2-3 (Ill. Rev. Stat. 1979, ch. 105, par. 2-3) provide for the contents of the petition to organize a park district and the filing, notice, and hearing on the petition. The "time and manner of conducting" the referendum to organize a park district are to be in accordance with the general election law of the State. (Ill. Rev. Stat., 1980 Supp., ch. 105, par. 1-5.) Article 28 of the Election Code (Ill. Rev. Stat. 1979, ch. 46, par. 28-1 et seq.) deals with the submission to the voters of questions of public policy, and certain of its provisions, particularly sections 28-1, 28-2 and 28-4, are relevant to the resolution of some of the objections to the petition raised below.
The objectors first contend that section 2-2 of the Park District Code (Ill. Rev. Stat., 1980 Supp., ch. 105, par. 2-2) was not complied with in two respects: the publication of the notice of intent to petition for formation of a park district was not effectuated prior to the filing of the petition as required by law; and the publication of notice was in The Free Press, which, according to the publisher's certificate, was a newspaper of general circulation published in the city of Carpentersville, Kane County, and is not in conformance with the statute requiring publication in a newspaper published within the proposed political subdivision, or if none, in a newspaper of general circulation within the territory of the proposed political subdivision. In this case, the proposed park district is entirely within McHenry County.
Section 2-2 provides, inter alia, as follows:
"The petition must include an affidavit attesting that notice of intent to petition for formation of a park district has been published as required by the general election law. * * *" (Ill. Rev. Stat., 1980 Supp., ch. 105, par. 2-2.)
The relevant provision of the Election Code is section 28-2 (Ill. Rev. Stat., 1980 Supp., ch. 46, par. 28-2), which provides in pertinent part:
"A petition for the creation of a political subdivision whose officers are to be elected rather than appointed must have attached to it an affidavit attesting that at least 108 days and no more than 138 days prior to such election notice of intention to file such petition was published in a newspaper published within the proposed political subdivision, or if none, in a newspaper of general circulation within the territory of the proposed political subdivision in substantially the following form:
NOTICE OF PETITION TO FORM A NEW ____
Residents of the territory described below are notified that a petition will or has been filed in the Office of ____ *1060 requesting a referendum to establish a new ____, to be called the ____.
The officers of the new ____ will be elected on the same day as the referendum. Candidates for the governing board of the new ____ may file nominating petitions with the officer named above until ____.
The territory proposed to comprise the new ____ is described as follows:
(description of territory included in petition)
(signature ____.
Name and address of person or persons proposing the new political subdivision."
Petitioners contend that a petition may be filed before the publication of the notice since the form of the notice contained in section 28-2 states that "a petition will or has been filed * * *." They further contend that an affidavit signed by David Haraburda, one of the proposers of the park district, and filed with the petition states that The Cardunal Free Press is a newspaper of general circulation within the territory of the proposed new park district.
 1 We believe that the reason for the statutory requirement of notice is to give notice to residents of the proposed park district territory of a referendum to establish a new park district. The form of the notice contained in section 28-2 states that "a petition will or has been filed * * *." This language is an indication of legislative intent that the petition may be filed before the publication. In the case at bar, at the time the petition was filed on November 4, 1980, there was an affidavit attached signed by David Haraburda which stated that "on or about November 4, 1981, being the 131st day before the March 6, [sic] 1982 election, the affiant hereby has caused the notice of intention to file a petition for the formation of a new park district to be known as the Greater Algonquin Park District to be published in The Cardunal Free Press * * *." The record further shows that a publisher's certificate was filed on November 18, 1981, certifying that the notice was published on November 6, 1981. We find that the filing of the petition with the Haraburda affidavit and the subsequent filing of the publisher's certificate of publication were in substantial compliance with the aforementioned statutes. "`Substantial and not literal compliance with technical requirements of election laws seems to be a general rule.'" Havens v. Miller (1981), 102 Ill. App.3d 558, 565, quoting 3 Sutherland, Statutory Construction § 70.01, at 296 n. 13 (4th ed. 1974); see also Lewis v. Dunne (1976), 63 Ill.2d 48, 53, 344 N.E.2d 443.
Further, we do not conclude that The Cardunal Free Press was a newspaper failing to meet the statutory requirement contained in section 28-2 of being "a newspaper published within the proposed political *1061 subdivision, or if none, * * * a newspaper of general circulation within the territory of the proposed political subdivision * * *." First, it appears to have been admitted by counsel for one of the objectors at the hearing below that there was no newspaper published within the district. Thus the question remaining is whether The Cardunal Free Press was a newspaper of general circulation within the territory of the proposed park district. The affidavit of David Haraburda filed with the petition stated that The Cardunal Free Press was a newspaper of general circulation within the territory of the proposed new park district. The objectors did not contradict the truth of this affidavit in their objections, but instead, argue on appeal that the publisher's certificate, filed later, states that the newspaper is "of general circulation regularly published in the city of Carpentersville in the county of Kane * * *." No proof was offered by the objectors at the hearing on the objections that The Cardunal Free Press was not of general circulation within the proposed park district. Nor does the publisher's certificate directly contradict Haraburda's affidavit. Absent any evidence to the contrary, it can be concluded from the Haraburda affidavit and the publisher's certificate that while the newspaper is published in Carpentersville, it is of general circulation in both Carpentersville and the proposed district. Under these circumstances, the unrebutted proof is sufficient to establish that The Cardunal Free Press is a newspaper of general circulation in the proposed park district and this objection cannot be sustained.
The objectors contend next that the notice of hearing caused to be published by petitioners was not in compliance with section 2-3 of the Park District Code (Ill. Rev. Stat. 1979, ch. 105, par. 2-3). They argue that a second publisher's certificate which certifies to publication of the notice of hearing reveals again that the notice was published in The Free Press which is a newspaper of general circulation and published in Carpentersville, Kane County. Additionally, they argue that "An Act * * * in relation to notices" (Ill. Rev. Stat. 1979, ch. 100, par. 1 et seq.) requires publication of the notice in a newspaper published within the particular unit of local government or if none, in a newspaper published in the county in which the unit of local government is located.
 2 Section 2-3 of the Park District Code provides in pertinent part:
"An organization petition under Section 2-2 or 2-2.1 shall be filed in the office of the clerk of the circuit court of the county in which such proposed district, or the greater or greatest portion in area thereof, is situated together with a request that the circuit judge set a date and time for a public hearing thereon. The circuit judge shall fix a date and time, not less than 30 days nor more than 180 days after the date of filing of such petition and hearing request, for a public hearing on the subject of the petition. Notice of *1062 the time and place of such hearing shall be given by the clerk of the circuit court at least 20 days prior to the date fixed for such hearing by at least one publication thereof in one or more daily or weekly newspapers having a general circulation within the proposed park district." (Ill. Rev. Stat. 1979, ch. 105, par. 2-3.)
It is evident from examination of this provision that the circuit clerk shall cause notice of the time and place of the hearing to be given in a daily or weekly newspaper "having a general circulation within the proposed park district." While the second publisher's certificate attested to publication of the notice of hearing on November 16, 1981, in The Free Press, a newspaper of general circulation in the city of Carpentersville, Kane County, we find, as concluded above, that there is unrebutted evidence that this newspaper is of general circulation in the proposed park district as well. Again, there was no evidence offered at the hearing which would contradict Haraburda's affidavit that it was a newspaper of general circulation within the park district. Also, we find that "An Act * * * in relation to notices" is not applicable here, where the Park District Code specifies the method of publication as it does in section 2-3. The general provisions for notice under chapter 100 do not come into play where another statute is specific. Thus, we find substantial compliance with the notice of hearing requirement under section 2-3.
 3 Although an examination of the trial court's ruling indicates that the only reason stated for the dismissal of the petition was because of "defective publication," we will review all the other objections raised below to determine if the court's judgment can be sustained on any other legal basis. If correct, the judgment of the trial court may be sustained for reasons other than those relied upon by it. Shufelt v. City of Rockford (1980), 89 Ill. App.3d 717, 719, 412 N.E.2d 4; U-Haul Co. v. Town of Cicero (1980), 87 Ill. App.3d 915, 919, 410 N.E.2d 286.
 4, 5 Another objection to the petition is that it failed to have a proper certificate at the bottom of the petition in compliance with section 28-3 of the Election Code. (Ill. Rev. Stat., 1980 Supp., ch. 46, par. 28-3.) More specifically, the objectors argue that the certificate does not specify that the circulator is a registered voter of the district in which the question of public policy is to be submitted and that the signatures on the petition were signed in the circulator's presence within the jurisdiction of the election authority where the person so certifying is registered to vote. We need not determine whether the certification here was in substantial compliance with that provision as we find that section 28-3 is inapplicable.
Section 28-1 of the Election Code (Ill. Rev. Stat., 1980 Supp., ch. 46, par. 28-1) provides, inter alia, as follows:
"The initiation and submission of all public questions to be voted *1063 upon by the electors of the State or of any political subdivision or district shall be subject to the provisions of this Article.
* * *
Whenever a statute provides for the initiation of a public question by a petition of electors, the provisions of such statute shall govern with respect to the number of signatures required, the qualifications of persons entitled to sign the petition, the contents of the petition, the officer with whom the petition must be filed, and the form of the question to be submitted. If such statute does not specify any of the foregoing petition requirements, the corresponding petition requirements of Section 28-6 shall govern such petition."
It is clear from this provision that if the statute providing for the initiation of a public question specifies the petition requirements, then it controls on these requirements over provisions of the Election Code. Turning to the Park District Code, we find that it does specifically provide for the number of signatures and qualifications of persons entitled to sign the petition (Ill. Rev. Stat., 1980 Supp., ch. 105, par. 2-2), the contents of the petition (Ill. Rev. Stat., 1980 Supp., ch. 105, par. 2-2), the officer with whom the petition must be filed (Ill. Rev. Stat. 1979, ch. 105, par. 2-3), and the form of the question to be submitted. (Ill. Rev. Stat., 1980 Supp., ch. 105, par. 2-5.) Therefore, section 28-3 of the Election Code, which provides generally for the contents of petitions, does not govern in the case at bar since the Park District Code provides more specific legislation on the same topic. It is a fundamental rule of statutory construction that where there exist a general statutory provision and a specific statutory provision, either in the same or another act, which both relate to the same subject, the specific provision controls and should be applied. (United States Steel Corp. v. Pollution Control Board (1978), 64 Ill. App.3d 34, 43, 380 N.E.2d 909; Cook County Police & Corrections Merit Board v. Illinois Fair Employment Practices Com. (1978), 59 Ill. App.3d 305, 308, 376 N.E.2d 11; Winston v. Mitchell (1977), 53 Ill. App.3d 206, 212, 368 N.E.2d 460.) Section 2-2 of the Park District Code does not require a certification of the petition. Had the legislature intended that a petition to organize a park district contain the same requirements as a petition to submit other public questions it surely could have so provided. We further note that the legislature has specifically provided in the Park District Code that "[w]henever a proposition or public question is required to be submitted, pursuant to this Act, for approval or rejection by the electorate at an election, the time and manner of conducting such referendum shall be in accordance with the general election law of the State." (Emphasis added.) (Ill. Rev. Stat., 1980 Supp., ch. 105, par. 1-5.) *1064 We believe the legislature intended to consolidate the time and manner of the many local and state elections by this provision, but left to each specific statute the form and contents of the petition. Thus we conclude that the certification provisions of section 28-3 of the Election Code are inapplicable to the petition filed herein.
 6 The objectors also contend that the petition fails to reasonably inform the voters of its contents and that the legal description contained therein is deficient. No cases have been cited by the objectors as authority for these objections. Nevertheless, we have examined the petition and find that it meets the principal requirements set out in section 2-2 of the Park District Code (Ill. Rev. Stat., 1980 Supp., ch. 105, par. 2-2) which require the petition to clearly define the territory intended to be embraced in such district and the name of the proposed district.
The petition describes the territory by metes and bounds. In addition it specifies that the territory "is contiguous territory and lies within the county of McHenry" and "closely approximates the community served by Algonquin, Illinois." The petition further states that it is for the organization of the Greater Algonquin Park District. We conclude the petition is in substantial compliance with the statutory requirement.
Finally, the objectors contend that at the time the petition was filed no written request to set a date and time for a public hearing accompanied the petition thus invalidating the petition pursuant to section 2-3 of the Park District Code. (Ill. Rev. Stat. 1979, ch. 105, par. 2-3.) Section 2-3 provides:
"An organization petition under Section 2-2 or 2-2.1 shall be filed in the office of the clerk of the circuit court of the county in which such proposed district, or the greater or greatest portion in area thereof, is situated together with a request that the circuit judge set a date and time for a public hearing thereon. The circuit judge shall fix a date and time, not less than 30 days nor more than 180 days after the date of filing of such petition and hearing request, for a public hearing on the subject of the petition. Notice of the time and place of such hearing shall be given by the clerk of the circuit court at least 20 days prior to the date fixed for such hearing by at least one publication thereof in one or more daily or weekly newspapers having a general circulation within the proposed park district.
If no request for a hearing accompanied the petition or if a hearing on the petition has not been held within the time required by this Section, such petition shall be void and shall be dismissed by the circuit judge."
From our examination of the record, there is no written request or other notation of a request for a hearing date. However, it is evident that a *1065 hearing was held on December 7, 1981, which was continued for a further hearing and decision on December 10, 1981. These hearings were held within the time prescribed in section 2-3, and the objectors filed their objections and were heard thereon. The relevant statute does not mandate a written request for a hearing, and we can infer from this record that an oral request must have been made since a hearing date was set. As the objectors can show no prejudice from the procedure followed, we find the statute has been complied with.
 7 An additional question raised on this appeal by the petitioners is the standing of certain objectors to file objections to the petition in the circuit court. Petitioners contend that section 10-8 of the Election Code requires that, in order to file an objection to such a petition, the person must be a "legal voter of the political subdivision or district in which the * * * public question is to be voted on * * *." (Ill. Rev. Stat. 1979, ch. 46, par. 10-8.) However, we reject petitioner's contention that section 10-8 controls, since section 28-4 of the Election Code limits the further applicability of sections 10-8 to 10-10.1 to "questions of public policy required to be filed with local election officials and election authorities, and to petitions for advisory questions of public policy required to be filed with the State Board of Elections * * *." (Ill. Rev. Stat., 1980 Supp., ch. 46, par. 28-4.) In the case at bar, the Park District Code specifies that a petition to organize a park district shall be filed in the office of the clerk of the circuit court. We find no provision in either the Election Code or the Park District Code which specifies the legal status one must have in order to file an objection to a petition for formation of a park district. Considering the differences between organization of a park district and nomination of persons for public office under the Election Code, it would appear that the interest necessary to file objections to a petition to organize a park district should not be restricted to only "legal voters." (See, e.g., In re Organization of Byron Park District (1978), 67 Ill. App.3d 61, 385 N.E.2d 67.) We find here that the statements of interest contained in the objections are sufficient to entitle all the objectors to object to the formation of the district. The objection filed by the village of Lake in the Hills stated that portions of the proposed park district are either already part of the village or in the process of being annexed. All the other objections were by either legal voters within the proposed district or owners of legal title of real property or beneficiaries of trusts owning real property within the proposed district. We deem these interests sufficient since formation of a park district may have tax consequences upon the owners of real property located within the proposed district. Similarly, we believe that the village of Lake in the Hills as a municipality has articulated a sufficient interest in that it alleges that a portion of its boundaries are within the proposed district.
*1066 For the foregoing reasons, we reverse the trial court's order dismissing the petition and we remand with directions to hold a hearing to determine whether the boundaries as defined in the petition are reasonable boundaries for the formation of a park district.
Reversed and remanded with directions.
HOPF and NASH, JJ., concur.
NOTES
[1] We have concluded from this record that The Free Press and The Cardunal Free Press are the same newspaper.