CATHLEEN R. ADSIT *et al.*, Plaintiffs-Appellants, v. TED SANDERS, State Superintendent of Education, *et al.*, Defendants-Appellees.

Fourth District   No. 4—86—0566

Opinion filed June 29, 1987.

McCULLOUGH, J., dissenting.

Wright Law Offices, of Danville, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Bret A. Rappaport, Assistant Attorney General, of Chicago, of counsel), for appellee Ted Sanders.

James K. Borbely, of Kirk, Wolgamot, Kurth & Borbely, of Danville, for appellee James H. Ellis.

Gordon R. Stipp, of Nelson & Stipp, of Hoopeston, for other appellees.

JUSTICE LUND delivered the opinion of the court:

Plaintiffs appeal an order of the circuit court of Vermilion County which, upon administrative review, confirmed a decision of the State Superintendent of Education, which affirmed a decision by the regional superintendent of education, Vermilion County.

On July 25, 1985, a petition was filed with James Ellis, superintendent of the educational service region for Vermilion County, requesting that the next regularly scheduled election include a referendum on the establishment of a new community unit school district (petition for combination). The proposed school district would combine two already existing contiguous school districts: the Hoopeston-East Lynn Community Unit School District No. 11, situated in Vermilion and Iroquois Counties, and Wellington Community Unit School District No. 7, situated entirely in Iroquois County. Because the majority of the territory of the proposed school district lay in Vermilion County, the petition was sent to the regional superintendent of education for Vermilion County. The petition was based on the requirements of section 11A—3 of the School Code (Ill. Rev. Stat., 1984 Supp., ch. 122, par. 11A—3). One of the requirements is the formation of a "Committee of Ten," consisting of 10 of the petitioners who have certain specified powers to act on behalf of all the petitioners. (Ill. Rev. Stat., 1984 Supp., ch. 122, par. 11A—3.) Ten of the twelve defendants in this appeal comprise the "Committee of Ten" designated in the petition. The other two defendants are James Ellis, regional superintendent of education for Vermilion County (regional superintendent), and Ted Sanders, State Superintendent of Education (State Superintendent).

On August 19, 1985, a petition was filed in opposition to the petition for combination (objectors' petition). The objectors' petition was signed by 10 residents, all taxpayers and voters, living within the boundaries of the proposed school district. These 10 citizens are the plaintiffs in this cause (the objectors). The objectors' petition alleged the petition for combination failed to conform to the requirements of article 28 of the Election Code (Ill. Rev. Stat. 1983, ch. 46, par. 28—1 et seq.). The majority of the objections were based on section 28—3 of the Election Code (Ill. Rev. Stat., 1984 Supp., ch. 46, par. 28—3). The objectors' petition requested that the regional super-

intendent transmit the petition for combination to the proper electoral board pursuant to section 10—9 of the Election Code (Ill. Rev. Stat., 1984 Supp., ch. 46, par. 10—9) for a determination as to whether the petition conformed to the requirements of the Election Code.

The "Committee of Ten" moved to strike and dismiss the objectors' petition arguing, *inter alia*, the Election Code did not apply as the matter was exclusively governed by the School Code.

Regional Superintendent Ellis forwarded the petition for combination to the county officers electoral board, which convened on August 26, 1985. The electoral board issued an order which stated that the electoral board did not have jurisdiction. The petition for combination was sent back to Superintendent Ellis.

Subsequently, the objectors filed a complaint for declaratory judgment in the circuit court of Vermilion County (Objectors I) alleging that a controversy had arisen over the interpretation of the Election Code and the School Code. The complaint requested that the court interpret the statutes and, advocating the side of the objectors, requested that the court order the electoral board to proceed with a determination on the propriety of the petition for combination under the requirements of the Election Code.

A hearing was held on September 4, 1985. The court decided that section 11A—3 of the School Code (Ill. Rev. Stat., 1984 Supp., ch. 122, par. 11A—3) was controlling and that the regional superintendent is the proper party to rule on objections to the petition for combination. The provisions of the Election Code pertaining to an electoral board did not apply. In the context of the court's discussion on which party is the proper party to hear objections, the court made statements about the two statutes involved: the School Code and the Election Code. The court stated the School Code controls, and the Election Code does not apply. The docket entry and the written order prepared by counsel also contain similar statements. Again, it should be noted that the statements were made in a discussion of which of the two parties, the regional superintendent of education or the electoral board, is the proper party to rule on objections to the petition for combination. The court's order in Objectors I was not appealed.

After the judgment in the declaratory judgment proceeding, a hearing was convened by Regional Superintendent Ellis at which time the objectors asked that their objections to the petition for combination be decided. Ellis refused to rule, contending the declaratory judgment determined the question. In addition, the State Superin-

tendent did not rule on the objections.

The crux of the objections to the petition for combination goes to the legal sufficiency of the signature pages of the petitions. The signature pages are headed by the following words:

"SIGNATURE OF LEGAL VOTER    ADDRESS, STREET, CITY
    SCHOOL DISTRICT NO."

There was no other heading nor was there a statement at the bottom of each page to be completed by the person obtaining the signatures as is required by section 28—3 of the Election Code. Section 28—3 of the Election Code (Ill. Rev. Stat., 1984 Supp., ch. 46, par. 28—3) provides:

"Petitions for the submission of public questions shall consist of sheets of uniform size and each sheet shall contain, above the space for signature, an appropriate heading, giving the information as to the question of public policy to be submitted, and specifying the state at large or the political subdivision or district or other territory in which it is to be submitted and, where by law the public question must be submitted at a particular election, the election at which it is to be submitted. The heading of each sheet shall be the same. *** No signature shall be valid or be counted in considering the validity or sufficiency of such petition unless the requirements of this Section are complied with.

At the bottom of each sheet of such petition shall be added a statement, signed by a registered voter of the political subdivision or district in which the question of public policy is to be submitted, stating his residence address (and if a resident of a city having a population of over 10,000 by the then last preceding federal census, also stating the street and number of such residence), certifying that the signatures on that sheet of the petition were signed in his presence and are genuine, and that to the best of his knowledge and belief the persons so signing were at the time of signing the petition registered voters of the political subdivision or district in which the question of public policy is to be submitted and that their respective residences are correctly stated therein. Such statement shall be sworn to before some officer authorized to administer oaths in this State."

Defendants contend that the objectors are barred on appeal from raising the section 28—3 issues because of collateral estoppel resulting from the initial declaratory judgment action. The objectors sought the declaratory judgment asking the circuit court to deter-

mine that the local election board, rather than the regional superintendent of schools, hear objections to the petition seeking the school consolidation election. The circuit judge correctly determined that section 11A—3 of the School Code (Ill. Rev. Stat., 1984 Supp., ch. 122, par. 11A—3) placed the responsibility upon the regional superintendent.

Judge Skowronski, in voicing his determination stated:

"The clear language of Chapter 122, Section 11A—3 in the paragraph that I just read places the burden upon the Regional Superintendent to determine whether or not the petition is in compliance with the Election Code.

This statute does not say that the Regional Superintendent is to refer this to the proper Electoral Board. To the contrary, it indicates that the decision-maker is to be the Regional Superintendent, not an Electoral Board, and the Court is of the opinion that this clear and specific language controls, and that the one who is to make the decision as to whether or not the petition complies with the Election Code is not an Electoral Board as set forth in Section 10—9 of the Election Code, but the Regional Superintendent. So the Court is of the opinion, therefore, that as far as the complaint for declaratory judgment is concerned, that at this time the Court order would be that the School Code controls in this situation, specifically 11A—3 and the provisions therein, and that the proper individual to hear the objections which have previously been filed would be James H. Ellis, the Regional Superintendent for the Educational Services Region.

Accordingly, the Court will make that determination that James H. Ellis shall be the decision-maker in accordance with the School Code, and the Court will deny the relief that is requested in the complaint for declaratory judgment, specifically finding that the provisions of the Election Code are not applicable, and that the County Officers Electoral Board, or any other electoral board, as requested, be directed to hear this."

The docket entry included the following statement:

"Court orders that James Ellis shall be the decision maker in accordance with the School Code, and the Court denies relief requested in the complaint for declaratory judgment, specifically finding that the provisions of the Election Code are not applicable, and that the Court feels that it is not proper for the County Officers Electoral Board or any other [sic] officers electoral board to hear the matter."

The findings of the written order included the following:

"3. That the Court finds the critical language of Section 11 A—3 of The School Code, to-wit: ... 'Upon the Regional Superintendent determining that the petition, as filed or amended, is proper and is in compliance with the petition requirements set forth in The Election Code, he shall hear evidence as to the school needs and conditions of the territory and in the area within and adjacent thereto, ...', (*Illinois Revised Statutes*, Chapter 122, Section 11 A—3), places the burden upon the Regional Superintendent to hear and determine the objections raised by Plaintiffs' Objectors' Petition.

4. That had the Legislature intended that such Objectors' Petition be submitted to an Electoral Board created by The General Election Code, it would have specified that such objections be reviewed pursuant to Section 10—9 of The General Election Code (*Illinois Revised Statutes*, Chapter 46, Section 10—9).

5. That pursuant to Section 11 A—3 of The School Code, (*Illinois Revised Statutes*, Chapter 122, Section 11 A—3), the decision maker for such objections as Plaintiffs', is clearly and specifically the Regional Superintendent.

6. That neither the County Officers' Electoral Board, nor any other Electoral Board created pursuant to The General Election Code, is a proper Electoral Board to consider Plaintiffs' Objectors' Petition, for the reason that The General Election Code does not apply to this proceeding.

IT IS, THEREFORE, HEREBY ORDERED AS FOLLOWS:

A. That it is the Declaratory Judgment of this Court, *** that The Illinois School Code, and specifically Section 11 A—3 thereof (*Illinois Revised Statutes*, Chapter 122, Section 11 A—3), controls the Plaintiffs' Objectors' Petition, and it is proper for the Regional Superintendent to hear and determine the validity of Plaintiffs' objections.

B. That the prayer for relief contained within Plaintiffs' Complaint For Declaratory Judgment is denied, for the reason that The General Election Code of Illinois does not apply."

It is clear that Judge Skowronski was ruling only on the issue as to what forum should hear the objections to the petition for combination. The ruling cannot be interpreted as holding section 28—3 of the Election Code not applicable to petitions asking for a consolidation election. Collateral estoppel does not bar plaintiffs from pursuing their contention relative to the sufficiency of the petition.

The regional superintendent did not comply with the statutes and consider the objections to the petition for combination. Defendant contends this was not necessary, arguing that section 28—3 of the Election Code is preempted by the School Code.

To substantiate their position, defendants cite *In re Organization of Greater Algonquin Park District* (1982), 103 Ill. App. 3d 1056, 432 N.E.2d 306. The court quotes section 28—1 of the Election Code (Ill. Rev. Stat., 1980 Supp., ch. 48, par. 28—1), which states, in part:

> "Whenever a statute provides for the initiation of a public question by a petition of electors, the provisions of such statute shall govern with respect to the number of signatures required, the qualifications of persons entitled to sign the petition, the contents of the petition, the officer with whom the petition must be filed, and the form of the question to be submitted. If such statute does not specify any of the foregoing petition requirements, the corresponding petition requirements of Section 28—6 shall govern such petition."

After citing section 28—1 of the Election Code, the court in *Algonquin* stated:

> "It is clear from this provision that if the statute providing for the initiation of a public question specifies the petition requirements, then it controls on these requirements over provisions of the Election Code. Turning to the Park District Code, we find that it does specifically provide for the number of signatures and qualifications of persons entitled to sign the petition [citation], the contents of the petition [citation], the officer with whom the petition must be filed [citation], and the form of the question to be submitted. [Citation.] Therefore, section 28—3 of the Election Code, which provides generally for the contents of petitions, does not govern in the case at bar since the Park District Code provides more specific legislation on the same topic. It is a fundamental rule of statutory construction that where there exist a general statutory provision and a specific statutory provision, either in the same or another act, which both relate to the same subject, the specific provision controls and should be applied. [Citations.] Section 2—2 of the Park District Code does not require a certification of the petition. Had the legislature intended that a petition to organize a park district contain the same requirements as a petition to submit other public questions it surely could have so provided. We further note that the legislature has specifically provided in the Park District Code that '[w]henever a

proposition or public question is required to be submitted, pursuant to this Act, for approval or rejection by the electorate at an election, the *time* and *manner of conducting such referendum* shall be in accordance with the general election law of the State.' (Emphasis added.) [Citation.] We believe the legislature intended to consolidate the time and manner of the many local and state elections by this provision, but left to each specific statute the form and contents of the petition. Thus we conclude that the certification provisions of section 28—3 of the Election Code are inapplicable to the petition filed herein." 103 Ill. App. 3d 1056, 1063-64, 432 N.E.2d 306, 311-12.

The statute regulating review of park district petitions provided in part:

"If the circuit judge finds, upon such hearing, that the petition meets the requirements of this Act and the general election law, *** he shall order the question submitted to referendum ***." (Ill. Rev. Stat., 1980 Supp., ch. 105, par. 2—4.)

Section 1—1 of the Election Code provides:

"This Act shall be known and may be cited as The Election Code. This Act is the general election law of Illinois and any reference in any other Act to 'the general election law' or 'the general election law of this State' is a reference to this Act, as now or hereafter amended." (Ill. Rev. Stat. 1983, ch. 46, par. 1—1.)

While section 11A—3 of the School Code speaks of "compliance with the Election Code" and section 2—4 of the Park District Code (Ill. Rev. Stat., 1980 Supp., ch. 105, par. 2—4) speaks of "the petition meet[ing] the requirements of *** the general election law," section 1—1 of the Election Code equates the term "Election Code" and "general election law." The Park District Code, as illustrated in *Algonquin*, contained the elements referred to in section 28—1 of the Election Code, and the School Code also provides for those elements. Those elements are specifically found in section 28—6 of the Election Code. Because the School Code provides for these same elements in section 11A—3, it is not necessary to use section 28—6 of the Election Code. However, neither the Park District Code nor the School Code contain provisions comparable to section 28—3 of the Election Code. Regardless of its correctness, *Algonquin* is precedent for defendants' position that section 28—3 of the Election Code is not applicable to petitions for combinations of school districts.

In determining whether section 28—3 of the Election Code ap-

plied to detachment petitions, the court in *Shapiro v. Regional Board of School Trustees* (1983), 116 Ill. App. 3d 397, 451 N.E.2d 1282, differentiated between referenda and detachment proceedings in holding the application of section 28—3 was not mandatory. The court stated:

"However, as plaintiffs correctly note, referenda and detachment proceedings are not 'the same matter.' While defendants' position is that the similarity between the two is sufficient to require application of the Election Code, they cite no cases wherein statutes involving arguably similar matter were construed *in pari materia*, in effect expanding the subject matter of one statute by analogy. In each of the above cases, provisions of the Election Code were applied because they governed the exact matter in question. We do not agree that plaintiffs had a duty here to browse through the Election Code and decide if any of the numerous provisions prescribing the form and contents of the various petitions were 'close enough' to a petition for detachment to mandate their applicability, particularly where there was an established practice of the Board upon which they could rely. Of course, the Board may adopt these standards in order to give petitioners some uniform guidance on the proper form of a petition, and we urge that it do so. We note that the standards would have avoided many of the evidentiary problems which plagued the hearings on this petition." 116 Ill. App. 3d 397, 406-07, 451 N.E.2d 1282, 1288-89.

We recognize the complex format for petitions for combination of school districts. The petition must request the election, describe the territory, set forth the tax rates, designate a committee of 10 (who shall have limited power to amend the petition and voluntarily dismiss the petition), and, in some cases, request a separate ballot authorizing issuance of bonds. (Ill. Rev. Stat., 1984 Supp., ch. 122, par. 11A—3.) This complexity must be considered because section 28—3 of the Election Code requires each page of the signature sheets to contain an appropriate heading giving information as to the policy to be submitted and specifying the district where the election will be held.

Each petition for combination filed in this case consisted of five pages of explanation, including legal descriptions, tax rates, and names of the appointed "Committee of Ten." Page 5 had signature lines on the bottom for two names. There then followed three pages for the signatures, with space for name, address, and school district number. Each signature page had space for 26 names. After the sig-

nature pages, there were two pages of maps showing the affected district boundaries and two more pages from plat books showing the areas affected. There then followed a signed affidavit by the person who circulated the petition. The general form of the affidavit was sufficient to comply with the specific requirements of section 28—3 of the Election Code. Four original petitions were filed, each with signatures on every available signature line.

The objections to the petition for combination relate to noncompliance with section 28—3, signatures by people who thought they were signing some other type of request, circulation of the petition by other than those signing the affidavit, as well as other related matters. Affidavits are attached to the objections substantiating the objections. We note that strict compliance with section 28—3 would have avoided most of the objections.

Because of the complexities in preparing an appropriate heading for the signature pages of the petition, there is concern with requiring compliance with section 28—3. Should the heading state more than that the petition seeks an election to consolidate the two districts? Should the tax consequences be placed in the heading? Should the names of the people who are being appointed to the "Committee of Ten" be listed? If bonding power was going to be sought by the election, should that be set forth in the heading? One could argue that a heading and the required affidavit could fill up the entire page, leaving no space for signature lines.

Regardless of the enumerated difficulties, we are still faced with the fact that the School Code states the petitions are to comply with "the petition requirements set forth in The Election Code." (Ill. Rev. Stat., 1984 Supp., ch. 122, par. 11A—3.) The only requirements other than section 28—3 requirements are contained in section 28—6, and the section 28—6 provisions are specifically provided for (thus, preempting section 28—6) in article 11A of the School Code. Why the reference to the Election Code in the School Code unless section 28—3 is to be used?

Section 2A—1 of the Election Code (Ill. Rev. Stat. 1983, ch. 46, par. 2A—1) states, in pertinent part:

"(a) No public question may be submitted to any voters in this State, *** except pursuant to this Code, notwithstanding the provisions of any other statute or municipal charter."

Article 28 of the Election Code governs questions of public policy. Section 28—1 states, in part:

"The initiation and submission of all public questions to be voted upon by the electors of the State or of any political sub-

division or *district* shall be subject to the provisions of this Article." (Emphasis added.) (Ill. Rev. Stat., 1984 Supp., ch. 46, par. 28—1.)

Section 1—3 of the Election Code in defining "District" includes "school district" and "school board districts." Ill. Rev. Stat., 1984 Supp., ch. 46, par. 1—3.

We come to the conclusion that the legislative intent is to require the provisions of section 28—3 to apply to a petition for consolidation of school districts. As indicated in *Shapiro v. Regional Board of School Trustees* (1983), 116 Ill. App. 3d 397, 451 N.E.2d 1282, compliance could well have avoided many of the objection problems present in this case. We reject the decision in *In re Organization of Greater Algonquin Park District* (1982), 103 Ill. App. 3d 1056, 432 N.E.2d 306. Because the original petitions are part of the record on appeal and clearly indicate the failure to comply with section 28—3, there is no need to return this cause to either the circuit court or the regional superintendent of schools. The petition for combination must be dismissed.

The required hearing on petitions can be a short, concise, informative provision adequately complying with section 28—3.

Reversed and the petition requesting the call of an election for the purpose of voting for or against the establishment of a community unit school district filed in the office of the regional superintendent of schools of Vermilion County on July 25, 1985, is ordered dismissed.

Reversed and remanded with directions.

SPITZ, P.J., concurs.

JUSTICE McCULLOUGH, dissenting:

Section 28—1 of the Election Code provides in part:

"Whenever a statute provides for the initiation of a public question by a petition of electors, *the provisions of such statute shall govern* with respect to the number of signatures required, the qualifications of persons entitled to sign the petition, the contents of the petition, the officer with whom the petition must be filed, and the form of the question to be submitted." Ill. Rev. Stat. 1985, ch. 46, par. 28—1. (Emphasis added.)

Section 11A—3 of the School Code does just that. It provides for the number of signatures required, the qualifications of persons entitled

to sign the petition, the contents of the petition, the officer with whom the petition must be filed, and the form of the question to be submitted.

Article 28 of the Election Code does not apply to unit school district formation petitions.

In *Shapiro*, a school detachment petition did not conform to the requirements of section 28—3. The appellate court found that section 28—3 did not apply to detachment proceedings. The *Shapiro* court did find that the Election Code applied in ruling on the registration of voters and their residency in the detachment area.

Here section 11A—3 requires the petition to be signed by at least 200 voters residing in at least three-fourths of the school districts or parts of districts and residing in the territory included in the petition. Other requirements as to signers are also set forth. (Ill. Rev. Stat. 1985, ch. 122, par. 11A—3.) As stated in *Shapiro*, limiting qualified petitioners to those who are registered voters can only be determined by reference to the Election Code. The Election Code does apply to determine the qualified petitioners.

*In re Organization of Greater Algonquin Park District* (1982), 103 Ill. App. 3d 1056, 432 N.E.2d 306, is also consistent with this dissent as cited by defendants and quoted in the majority opinion:

> "[S]ection 28—3 of the Election Code, which provides generally for the contents of petitions, does not govern in the case at bar since the Park District Code provides more specific legislation on the same topic." 103 Ill. App. 3d 1056, 1063, 432 N.E.2d 306.

The complexities referred to by the majority in the petition heading which are required by section 11A—3 are additional practical justifications for finding section 28—3 not applicable.

The cause should be remanded for a hearing on the objection. The regional superintendent at a hearing upon remand would have an opportunity to determine whether the petition is in proper form, as required by section 11A—3 and, whether, pursuant to the Election Code, the petition signers are voters and meet the residency requirements. A hearing on the objection before the superintendent will also show whether the signatures were properly signed to the multisheet petition.