*In re* PETITION TO FORM A NEW PARK DISTRICT COTERMINOUS WITH THE VILLAGE OF MAYWOOD, ILLINOIS, TO SUPERCEDE THE EXISTING CENTRAL AREA AND WEST MAYWOOD PARK DISTRICTS

First District (5th Division)   No. 1—89—0432

Opinion filed May 5, 1989.

Gregory A. Friedman, Charlene L. Holtz, and Evdoxia Beroukas, all of Friedman & Holtz, P.C., of Chicago, for appellant.

Stanley L. Hill, Adolphus Hall, Jr., and Vickie Voukidis Blum, all of Stanley L. Hill & Associates, P.C., of Chicago, for appellees.

JUSTICE COCCIA delivered the opinion of the court:

This action was brought on December 16, 1988, as a petition for the submission of the question whether to form a new park district with boundaries coterminous with those of the Village of Maywood and, in so doing, to supercede the existing West Maywood and Central Area Park Districts. In support of the petition, three separate sets of petition sheets were submitted to the trial court: one set purporting to include signatures of legal voters residing in the West Maywood Park District, a second set for purported legal voters residing in the Central Area Park District, and a third set for purported legal voters residing in the area within the Village of Maywood not currently within either park district.

On February 8, 1989, the trial court entered an order certifying the petition for submission to referendum. It is from that order that this appeal is taken.

We immediately took this appeal as an expedited matter on briefs only. On April 3, 1989, due to the shortness of time before the election within which to deal with the appeal, we entered an order staying certification of the referendum results until the further order of this court.

We have reviewed the briefs and record in this case and have concluded that the trial court erred in finding that the petition filed in this cause met the requirements of the Park District Code (Ill. Rev. Stat. 1987, ch. 105, par. 2—1 et seq.) and the general election law of Illinois. Accordingly, we need not deal with the several additional issues assigned as errors in this case. We therefore reverse and remand this cause to the trial court with directions as set forth herein.

On December 16, 1988, the last day permitted under the applicable provisions of the Election Code (Ill. Rev. Stat. 1987, ch. 46, par. 28—

2), a group calling itself the "Citizens for a Unified Park District" filed a petition in the county division of the circuit court of Cook County, Illinois, entitled "IN THE MATTER OF THE PETITION TO FORM A NEW PARK DISTRICT COTERMINOUS WITH THE VILLAGE OF MAYWOOD, ILLINOIS, TO SUPERCEDE THE EXISTING CENTRAL AND WEST MAYWOOD PARK DISTRICTS." Attached to that petition were the three sets of petition sheets purporting to contain the signatures of legal voters residing within the Central Area Park District, the West Maywood Park District, and the area within the Village of Maywood which was not a part of nor situated within a park district.

On January 18, 1989, the West Maywood Park District filed a motion to strike and dismiss the petition on grounds that the petition did not conform with section 2—4 of the Park District Code. Ill. Rev. Stat. 1987, ch. 105, par. 2—4.

Section 2—4 of the Park District Code specifically provides the trial court may certify a petition only if there is a finding that it "meets the requirements of [the Park District Code] and the general election law." (Ill. Rev. Stat. 1987, ch. 105, par. 2—4.) In particular, the West Maywood Park District asserted that the petition failed to comply with the requirements of the general election law, *i.e.*, section 28—3 of the Election Code. Ill. Rev. Stat. 1987, ch. 46, par. 28—3.

Petitioners filed their response to the West Maywood Park District's motion to strike and dismiss on January 24, 1989. They argued that the petition not only met the requirements of the Park District Code (Ill. Rev. Stat. 1987, ch. 105, par. 2—1 *et seq.*), but also that the Park District Code governed exclusively the procedure and contents of petitions for the formation of new park districts. They cited the case of *In re Organization of Greater Algonquin Park District* (1982), 103 Ill. App. 3d 1056, 432 N.E.2d 306, in support of their contention. Relying on *Algonquin*, petitioners asserted that, contrary to section 28—3, no circulator's statement and verification were needed. They further asserted that the heading requirement of section 28—3 did not apply to the petition sheets.

On January 25, 1989, the West Maywood Park District filed its reply in support of its motion to strike and dismiss. The West Maywood Park District informed the court that the second district's reasoning in *Algonquin* had been addressed and rejected in the subsequent fourth district decision in *Adsit v. Sanders* (1987), 157 Ill. App. 3d 416, 510 N.E.2d 547. The trial court reserved ruling on the applicability of section 28—3 of the Election Code until after evidence was heard on the objections.

After hearings over several days and after the taking of evidence, the court held that the provisions of the Election Code, including those under section 28—3 which require a circulator's verification and statement on each petition sheet, did not apply to a petition to form a new park district which would supercede existing park districts.

The West Maywood Park District complained that without a circulator's verification, it was unable to conduct a cross-examination to determine if the individuals signing the petition were legal voters as required by section 2—2.1 of the Park District Code. Ill. Rev. Stat. 1987, ch. 105, par. 2—2.1.

The trial court thereafter ruled that the three sets of petition sheets complied with the statute. The court further ruled that the petition met the requirements of the Park District Code and the general election law, and that the boundaries defined were reasonable boundaries for the formation of a park district. On February 8, 1989, the trial court ordered the question submitted to referendum at the next general election, April 4, 1989, and further ordered the clerk of the circuit court to certify the proposition to the county clerk.

■■ A petition for the submission of the question whether to form a new park district is governed by statute. (Ill. Rev. Stat. 1987, ch. 46, par. 28—1.) Section 28—1 states:

"The initiation and submission of all public questions to be voted upon by the electors of the State or of any political subdivision or district or precinct or combination of precincts shall be subject to the provisions of this Article.

Questions of public policy which have any legal effect shall be submitted to referendum only as authorized by a statute which so provides or by the Constitution." (Ill. Rev. Stat. 1987, ch. 46, par. 28—1.)

Section 28—1 provides further:

"Whenever a statute provides for the initiation of a public question by a petition of electors, the provisions of such statute shall govern with respect to the number of signatures required, the qualifications of persons entitled to sign the petition, the contents of the petition, the officer with whom the petition must be filed, and the form of the question to be submitted." Ill. Rev. Stat. 1987, ch. 46, par. 28—1.

We are accordingly free, by direction of this section of the Election Code, to proceed to that statute which provides for the initiation of a public question, namely the Park District Code, found in section 2—2 *et seq.* (Ill. Rev. Stat. 1987, ch. 105, par. 2—2 *et seq.*), which sets forth the conditions and requirements that must be addressed in a petition to

form a park district, particularly one that shall supercede the park districts previously existing within the limits of the municipality. See particularly Ill. Rev. Stat. 1987, ch. 105, par. 2—2.1.

Section 2—4 of the Park District Code provides:

"If the circuit judge finds, upon such hearing, that the petition meets the requirements of this Act *and the general election law,* *** he shall order the question submitted to referendum ***." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 105, par. 2—4.

The "general election law" as referred to in section 2—4 is defined in section 1—1 of the Election Code:

"This Act is the general election law of Illinois and any reference in any other Act to 'the general election law' or 'the general election law of this State' is a reference to this Act, as now or hereafter amended." Ill. Rev. Stat. 1987, ch. 46, par. 1—1.

When comparing the requirements of petitions for the formation of park districts, as set forth in the Park District Code, with those of the Election Code, as required by section 2—4 of the Park District Code, we are directed to section 28—3 of the Election Code, which provides:

"Petitions for the submission of public questions shall consist of sheets of uniform size and each sheet shall contain, above the space for signature, an *appropriate heading,* giving the information as to the question of public policy to be submitted, and specifying the state at large or the political subdivision or district or precinct or combination of precincts or other territory in which it is to be submitted and, where by law the public question must be submitted at a particular election, the election at which it is to be submitted. *** Such petition shall be signed by the registered voters of the political subdivision or district or precinct or combination of precincts in which the question of public policy is to be submitted in their own proper persons only, and opposite the signature of each signer his residence address shall be written or printed ***.

At the bottom of each sheet of such petition shall be added a statement, signed by a registered voter of the political subdivision or district or precinct or combination of precincts in which the question of public policy is to be submitted, stating the street address or rural route number of the voter, as the case may be, as well as the voter's city, village or town, certifying that the signatures on that sheet of the petition were signed in his presence and are genuine, and that to the best of his knowledge and belief the persons so signing were at the time of signing the petition registered voters of the political subdivision or

district or precinct or combination of precincts in which the question of public policy is to be submitted and that their respective residences are correctly stated therein. Such statement shall be sworn to before some officer authorized to administer oaths in this State." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 46, par. 28—3.

Noticeably absent in the required petition contents found in section 2—2 of the Park District Code are those provisions dealing with heading and certification which are required by the Election Code in section 28—3.

The issue that is framed before us accordingly is reduced to a resolution of the question of whether the petition as filed by the petitioners, seeking to form a new park district, is in conformity with the Park District Code and the general election law.

The West Maywood Park District contends that petitioners failed to comply with the heading requirement of section 28—3, because the petition sheets did not state that forming a new park district would require dissolving the existing park districts. The park district further contends that petitioners did not comply with the certification requirement of section 28—3, because the petition sheets failed to include the circulators' statements, sworn to or otherwise.

Petitioners respond that section 28—3 of the Election Code is not applicable, in view of section 28—1 of the Election Code which, as noted above, states in effect that whenever a statute provides for the initiation of a public question by petition, the provisions of that statute shall govern with respect to the contents of the petition.

According to the petitioners, section 2—2 of the Park District Code (Ill. Rev. Stat. 1987, ch. 105, par. 2—2) alone governs the contents of their petition. Section 2—2 of the Park District Code states:

"In organizing any park district under this Code not less than 100 legal voters resident within the limits of such proposed park district may petition the circuit judge of the county in which such territory, or the greater or greatest portion thereof, in area, lies, to cause the question to be submitted to the legal voters of such proposed park district whether they will organize as a park district. Such petition shall clearly define the territory intended to be embraced in such district and the name of such proposed district. The petition must include an affidavit attesting that notice of intent to petition for formation of a park district has been published as required by the general election law. In cases coming within the terms of Section 2—2.1 the petition shall also set forth facts showing that the proposed park district

meets the requirements of that Section and shall be signed by the number of legal voters required by that Section." Ill. Rev. Stat. 1987, ch. 105, par. 2—2.

Petitioners point out that section 2—2 does not require certification or a heading; consequently, their petition met the requirements of the Park District Code. Petitioners rely upon *In re Organization of Greater Algonquin Park District* (1982), 103 Ill. App. 3d 1056, 432 N.E.2d 306, in support of their position.

The petitioners in *Algonquin*, as well as the petitioners in this cause, sought to organize a park district. The objectors in both cases moved to dismiss the petition on the grounds that it violated section 28—3 of the Election Code; in particular, the objectors in each case argued that the petition failed to meet the requirement as to the proper certification of the genuineness of the signatures appearing on each petition sheet. The circuit court in *Algonquin* dismissed the petition, and the petitioners appealed. The second district reversed, holding that section 28—3 was inapplicable.

The *Algonquin* court invoked section 28—1 of the Election Code to support its holding. The court concluded that it was clear from the provisions of section 28—1 that if the statute providing for the initiation of a public question specifies the petition requirements, then it controls on these requirements over provisions of the Election Code. The court then turned to section 2—2 of the Park District Code (Ill. Rev. Stat., 1980 Supp., ch. 105, par. 2—2) and found that it specifically provided for the contents of the petition. It therefore concluded that section 28—3 of the Election Code, which provided generally for the contents of petitions, did not govern since the Park District Code provided for more specific legislation on the same topic. It went on to note that it is a "fundamental rule of statutory construction that where there exist[s] a general statutory provision and a specific statutory provision, either in the same or another act, which both relate to the same subject, the specific provision controls and should be applied. [Citations.]" *Algonquin*, 103 Ill. App. 3d at 1063, 432 N.E.2d at 311-12.

The *Algonquin* court reasoned that had the legislature intended that a petition to organize a park district include appropriate certification (as set forth in section 28—3), it could have so provided. That court in further analyzing the problem was of the opinion that the legislature intended to govern the time and manner of referenda in the Election Code, leaving it to specific statutes such as the Park District Code to govern the contents of petitions. *Algonquin*, 103 Ill. App. 3d at 1063-64, 432 N.E.2d at 312, citing Ill. Rev. Stat., 1980 Supp., ch. 105, par. 1—5.

The West Maywood Park District, in contrast, points out that the rationale for the holding in *Algonquin* was subsequently rejected by the fourth district in *Adsit v. Sanders* (1987), 157 Ill. App. 3d 416, 510 N.E.2d 547.

The fourth district court refused to follow *Algonquin* on the issue of the applicability of section 28–3. Defendants in *Adsit* sought a referendum on the question of whether a new community unit school district should be formed. Objections to the petition were grounded on section 28–3, since it allegedly failed to meet that section's heading and certification standards. The defendants countered by arguing that section 28–3 was not applicable, in light of *Algonquin*.

The fourth district reviewed *Algonquin* at length. Unlike the second district, it also considered section 1–1 of the Election Code and section 2–4 of the Park District Code. The fourth district noted the similarities between section 2–4, which required then, as it does now, that a petition "meet[ ] the requirements of *** the general election law," and section 11A–3 of the School Code (Ill. Rev. Stat., 1984 Supp., ch. 122, par. 11A–3), which required compliance with "the petition requirements set forth in the Election Code." *Adsit*, 157 Ill. App. 3d at 423, 510 N.E.2d at 552.

The fourth district court, in rejecting *Algonquin*, went on to rely upon section 2A–1 of the Election Code:

"(a) No public question may be submitted to any voters in this State, *** except pursuant to this Code, notwithstanding the provisions of any other statute or municipal charter." (Ill. Rev. Stat. 1983, ch. 46, par. 2A–1.)

The court also made reference to the requirement of section 28–1 that all referenda be governed by the Election Code. (*Adsit*, 157 Ill. App. 3d at 425-26, 510 N.E.2d at 553.) Thus, the court concluded, the legislature intended for section 28–3 of the Election Code to apply. (*Adsit*, 157 Ill. App. 3d at 426, 510 N.E.2d at 553.) Relying upon the reasoning of this court in *Shapiro v. Regional Board of School Trustees* (1983), 116 Ill. App. 3d 397, 451 N.E.2d 1282, the fourth district observed that compliance with section 28–3 would have avoided many objection problems in the case before it. *Adsit*, 157 Ill. App. 3d at 426, 510 N.E.2d at 553.

Given the similarities between section 2–4 of the Park District Code and section 11A–3 of the School Code, *Algonquin* and *Adsit* appear to be irreconcilable. Although we are not bound by either decision (see *Seibring v. Parcell's Inc.* (1989), 178 Ill. App. 3d 62, 70, 532 N.E.2d 1335, 1340), we conclude that the fourth district reached the correct result in *Adsit*, by applying section 28–3. We will not assume

that the legislature intended for section 28—3 not to apply merely because section 2—2 contains no heading or certification requirements. Undeniably, a proper reading of the Election Code's section 28—1 reveals that the Park District Code's section 2—2 is applicable in this case. Yet that code's section 2—4, which applies with equal force, requires that petitions meet the requirements of the general election law. The Election Code's section 1—1, in turn, teaches that the general election law is the Election Code. And that code's section 28—3 requires headings and certification. If the legislature intended for section 28—3 not to apply, then why was the general election law mentioned in section 2—4 of the Park District Code? Were we to adopt the holding of *Algonquin* on this issue, the reference to the general election law in section 2—4 would be rendered superfluous. Such a result would be contrary to settled principles of statutory construction. See 2A N. Singer, Sutherland on Statutory Construction §46.06 (4th ed. 1984).

Our conclusion, however, rests upon an additional principle. The certification and oath requirement of section 28—3 is a meaningful method of significantly reducing the opportunity to introduce fraud through the use of illegal signatures on petitions. The requirement that the petition circulator certify that the signatures on that petition sheet signed in his presence are genuine and valid subjects the certifier to the penalty of perjury prosecution. (*Shipley v. Stephenson County Electoral Board* (1985), 130 Ill. App. 3d 900, 906-07, 474 N.E.2d 905, 910.) If we decided that section 28—3 did not apply, fraud would be more difficult to detect, at best; at worst, fraud would be tacitly encouraged. We do not believe the legislature intended to abandon this safeguard, nor will we countenance the loss of such protection for the electorate. See *People ex rel. Holland v. Edelman* (1975), 27 Ill. App. 3d 793, 796, 327 N.E.2d 338, 340 (in determining legislative intent, the consequences of various statutory constructions must be considered).

In the alternative, petitioners argue that if we apply section 28—3, it should not apply retroactively. They cite *Shapiro* to support their argument. But the reasons which moved us to hold, in *Shapiro*, that section 28—3 was inapplicable retroactively do not obtain here, because the facts of the case are distinguishable. First, *Shapiro* involved a detachment proceeding. Therefore, plaintiffs in *Shapiro* could argue, with some justification, that retroactive application of section 28—3 was oppressive, given the significant differences between detachment proceedings and referenda. In contrast, this case concerns a referendum, to which the Election Code's section 28—3 logically applies, since article 28 of that Code governs referenda. Second, the board in *Shapiro* had a history of accepting nonconforming petitions, and plain-

tiffs relied on that history when preparing their petition. Yet in our case petitioners rely solely upon what they describe in their brief as "the long established valid precedent of *Algonquin*." Curiously, *Adsit* is the only case that mentions *Algonquin*. Petitioners have failed to persuade us that section 28—3 should not apply retroactively.

█ We further note that the certification requirement of section 28—3 is mandatory. *Shipley v. Stephenson County Electoral Board* (1985), 130 Ill. App. 3d 900, 906, 474 N.E.2d 905, 910.

Finally, we hold that the heading requirement of section 28—3 is equally mandatory. Although we find no case authority that has dealt with this question in Illinois, we feel that the legislature sought to protect the signators and the electorate from misrepresentation and fraud as well as to make certain that they be fully informed as to the question of public policy they are being asked to support.

Given our view that the need for headings as required in section 28—3 is mandatory, there is a need to determine whether the headings supplied were in substantial compliance with the statutory requirement. We do note that the heading furnished does not indicate or advise the intended signator that the petition which has for its purpose the creation of a new park district would in fact supercede the two existing park districts, in that the two would of necessity be dissolved, should the referendum carry. We leave this for the circuit court to resolve.

We therefore reverse and remand this cause to the circuit court for a hearing on the issue of whether the subject petition meets the heading and certification requirements of section 28—3 of the Election Code. Accordingly, the mandate of this court shall issue forthwith. The stay entered on April 3, 1989, shall remain in effect pending the circuit court's ruling. Should the court rule that petitioners have complied with both the heading and certification requirements of section 28—3, then the stay shall automatically dissolve and the referendum results be certified. Should the circuit court rule, however, that petitioners have not complied with both the heading and certification requirements of section 28—3, then the trial court is directed to declare the referendum results void.

Reversed and remanded with directions.

MURRAY, P.J., and LORENZ, J., concur.