BURNIDGE BROTHERS ALMORA HEIGHTS, INC., Plaintiff-Appellant, v. CARLTON WIESE, Plato Township Highway Commissioner, *et al.*, Defendants-Appellees.

Second District   No. 2—85—0187

Opinion filed April 3, 1986.

Pamela K. Jensen and Wiley W. Edmondson, both of Brady, McQueen, Martin, Collins & Jensen, of Elgin, for appellant.

Mark T. Schuster, of Strom, Schuster & McCarty, of Elgin, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, a development corporation (developer), sought to compel the defendants, the Plato Township highway commissioner (commissioner), the Plato Township Road District (district), and the Plato Township Board (board) by petition for writ of *mandamus* in the circuit court of Kane County to provide street lights for its Plato Township subdivision known as Catatoga III. The court granted the defendants' cross-motion for summary judgment based on this court's decision in *A. S. Schulman Electric Co. v. Village of Fox Lake* (1983), 115 Ill. App. 3d 746, that even though a municipality may be otherwise empowered to enter into a contract to provide street light-

ing, the contract as executed will be void unless a specific appropriation for that purpose has been made. The court found that no specific appropriation for the street lights at issue was made.

The developer does not argue that there is a genuine issue or issues of material fact which would require that this court reverse and remand the cause for trial. It argues, however, that there is a duty which has vested in the office of the Plato Township highway commissioner, who is also an officer of Plato Township and the Plato Township Road District, to provide for lighting of the public roads in Catatoga III, and that *mandamus* may properly issue to compel performance of that duty. Defendants counter that the commissioner's discretion to provide for street lighting is neither bound by the action of his predecessor commissioner nor subject to writ of *mandamus*, nor is the board's discretion in the matter of the annual appropriation ordinance and tax levy bound by the recommendation of the commissioner nor subject to a writ of *mandamus*.

The pleadings, depositions, admissions and affidavits on file contain the following admitted facts, which are presented in summary fashion for purposes of this opinion.

The Plato Township Road District is comprised of a single township, Plato Township. At the time plaintiff's petition for *mandamus* was filed, Carlton Wiese was the Plato Township highway commissioner. By statute, the Plato Township highway commissioner is also an officer of Plato Township. (Ill. Rev. Stat. 1983, ch. 121, par. 6—112.) Wiese was preceded as commissioner by Frank Brizzolara and, before him, William Hulke. In the initial platting phase of Catatoga III, Hulke had some discussions with Logan Burnidge, developer's president, concerning street lighting for the subdivision. In 1979, Hulke resigned his position, and Frank Brizzolara was appointed highway commissioner. Hulke told Brizzolara that there were to be street lights in Catatoga III, and that it was up to Brizzolara to approve or disapprove them. Other than the town of Plato itself, Brizzolara did not know of any other subdivision in Plato Township that had street lights in the subdivision. Brizzolara accepted the roads and streets in Catatoga III into the Plato Township Road District.

On September 17, 1980, Brizzolara attended a meeting at the office of the county superintendent of highways at which he, Burnidge, and William Carter, the superintendent, were present. The superintendent required that one street light be placed at the intersection of the subdivision outlet and the county highway. An additional nine street lights were located on a plat map of the subdivision, the words "street lights location approved" were written on the plat, and

Frank Brizzolara, Logan Burnidge and William Carter signed underneath the words. Later, Brizzolara also signed a "Supplement to Rate 23 Contract" which was dated March 11, 1981. The contract was with Commonwealth Edison Company and covered the maintenance and energizing of the nine street lights. The contract detailed the cost per light per month; the approximate total annual cost for maintaining and energizing the lights was $1,000. The developer also contracted with Commonwealth Edison Company, agreeing to pay for the furnishing and installation of the lights and related equipment. Its check, dated March 23, 1981, for $6,973.42 was returned to it under cover letter from Commonwealth Edison dated December 2, 1982, due to its company policy that agreements are valid only for six months due to inflation. Commonwealth Edison's files did not contain the "Supplement to Rate 23 Contract" signed by Brizzolara, and it was not accepted by Commonwealth Edison. Brizzolara mailed it to Commonwealth Edison, but was not sure if this was before or after his term expired in April of 1981. After approving the light locations, and signing the "Supplement to Rate 23 Contract," Brizzolara submitted his recommended budget to the township board. He said that the necessary funds to pay for the energizing of the lights by way of contract with Commonwealth Edison were "buried" in his proposal. Payments to Commonwealth Edison were to be made out of the general road fund of the Plato Township Road District. Brizzolara's proposed budget was not approved as presented. Kenny Bartals (phonetic) made up the budget that was approved at the town meeting. Brizzolara was aware at the time he signed the "Supplement to Rate 23 Contract" and at the time he prepared his proposed budget that the Plato Township Board of Trustees was opposed to street lights at public expense in Catatoga III subdivision.

In March 1981 Carlton Wiese was duly elected as highway commissioner of the Plato Township Road District, succeeding Frank Brizzolara in said office on April 27, 1981. Wiese indicated to Commonwealth Edison that Plato Township did not intend to enter into a "Supplement to Rate 23 Contract" to light the public roads in Catatoga III. At various times since September 1980, plaintiff requested and demanded of the defendants that they meet their commitment to provide for lighting of the roads in Catatoga III; defendants have refused and continue to refuse to provide for such lighting.

■■ ■ At the outset, we note that in determining whether judgment was correctly entered for the defendants as a matter of law, we are not limited to the precise reasons expressed by the trial court in entering its summary judgment. (*Coomer v. Chicago & North*

*Western Transportation Co.* (1980), 91 Ill. App. 3d 17; *Murphy v. Rochford* (1977), 55 Ill. App. 3d 695.) We also observe that the sole function of a court reviewing a trial court's entry of summary judgment is to determine whether that court correctly ruled that no genuine issue of material fact had been raised, and if none was raised, whether judgment was correctly entered as a matter of law. (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933.) Facts unrelated to the essential elements of the plaintiff's cause of action are immaterial, and regardless of how sharply controverted, their presence in the record will not warrant denial of a motion for summary judgment. (*Mid States Vending Service, Inc. v. C.A.P., Inc.* (1977), 45 Ill. App. 3d 947.) A reviewing court may reverse an order granting summary judgment if it is determined that a genuine issue of material fact does exist (*Rubin v. City National Bank & Trust Co.* (1980), 81 Ill. App. 3d 1020), and on appeal from summary judgment for defendants, facts must be reviewed in the light most favorable to the plaintiff. *Montague v. School Board* (1978), 57 Ill. App. 3d 828.

■■■■ *Mandamus* is an extraordinary remedy to compel the performance of ministerial duties. (*Nugent v. Miller* (1983), 119 Ill. App. 3d 382.) A writ of *mandamus* is issued in the exercise of judicial discretion only in those cases where the plaintiff can demonstrate a clear right to this extraordinary relief. (*Walter v. Board of Education* (1982), 93 Ill. 2d 101.) The purpose of a *mandamus* proceeding is to enforce rights already lawfully vested, and rights cannot be acquired in such proceeding (*Weiner v. Forest Preserve District* (1984), 126 Ill. App. 3d 206); the relator seeking *mandamus* must show a clear legal right to have the action taken which he is demanding. (*Elgin National Bank v. Rowcliff* (1982), 109 Ill. App. 3d 719.) *Mandamus* is used only to compel a specific kind of behavior, *i.e.*, compliance with a ministerial duty of an office, and it does not issue to compel action that is discretionary. (*People v. Schyve* (1983), 112 Ill. App. 3d 777, *aff'd* (1984), 101 Ill. 2d 355.) Although *mandamus* has been used to compel *the exercise of* discretion which is vested in a public official (*Gordon v. Department of Transportation* (1982), 109 Ill. App. 3d 1071, *aff'd* (1983), 99 Ill. 2d 44; *People ex rel. Abner v. Kinney* (1964), 30 Ill. 2d 201), it may not be used to direct or alter the manner in which discretion is *to be* exercised. To do so would be to substitute a court's judgment and discretion for that vested in the public official, and that is not permitted. (*Freeman v. Lane* (1985), 129 Ill. App. 3d 1061; *Ickes v. Board of Supervisors* (1953), 415 Ill. 557.) Further, it has been held that the writ will not lie when the mandate depends upon the cooperation or approval of a third person who is

not before the court. (*Moser v. Highway Commissioner* (1983), 114 Ill. App. 3d 137.) If the cooperation of the third person is a matter of duty, however, and the third person is a public officer, the law will presume that he will do his duty, and the writ will lie. 114 Ill. App. 3d 137, 139.

■ Plaintiff contends the existence of defendants' duty to provide street lights in Catatoga III is two-fold: it is mandated by statute, and it arises out of plaintiff's reliance on the affirmative acts of commissioner Wiese's predecessors in office, Frank Brizzolara and William Hulke.

The statutes in question provide in pertinent part:

"The highway commissioner of each road district shall perform the functions stated in Sections 6—201.1 to 6—201.18, inclusive."

"Provide for the lighting of any public road or portion thereof in his district when in his opinion it is necessary for the convenience or safety of the public." Ill. Rev. Stat. 1983, ch. 121, pars. 6—201, 6—201.12.

On its face, section 6—201.12 contemplates the commissioner exercise discretion in providing lighting for public roads. It is undisputed that plaintiff has asked the defendants to provide lighting, and that defendants have refused. Although plaintiff in its reply brief appears to suggest that the refusal to provide lights does not amount to a determination that lighting in Catatoga III is not necessary for the convenience or safety of the public, it may reasonably be inferred from the foregoing undisputed fact that such is the case. Such an inference seems particularly reasonable, since plaintiff itself filed a motion for summary judgment, and since plaintiff has not sought to compel simply the *exercise* of the commissioner's discretion which, as noted above, is appropriately sought in an action for *mandamus*. (See *Gordon v. Department of Transportation* (1982), 109 Ill. App. 3d 1071, *aff'd* (1983), 99 Ill. 2d 44.) Further, plaintiff's position is that the duty to provide lighting *vested* in the office of the Plato Township highway commissioner; that is, that the discretion once exercised by a commissioner as to this matter is binding on his successor, the current highway commissioner and, in turn, on the other defendants. Consequently, any determination Wiese may have made with regard to the necessity for the lights is immaterial to plaintiff's cause of action.

Plaintiff's position here amounts to a refusal to accept the import of the events occurring subsequent to Brizzolara's determination that street lights were necessary in Catatoga III. Brizzolara signed the

necessary Commonwealth Edison "Supplement to Rate 23 Contract" and included funds in his proposed budget for the lighting. The funds were not specified as being for this purpose; they were "buried." The reason these funds were buried was because Brizzolara knew at the time he signed the contract that the board would not approve funds for this purpose if they appeared as a specific line item in the proposed budget. Brizzolara stated that except for the town of Plato proper, he did not know of any other subdivision in Plato Township that had street lights. In his deposition, William Carter, the county highway superintendent, stated the board had rather strong feelings on the matter of the street lights in Catatoga III, and that they were afraid they would get other street light requests from existing subdivisions elsewhere in the township.

Brizzolara's budget was not approved as it was submitted by him to the board, and a budget drafted by someone else was ultimately approved by the board. It is undisputed that no specifically designated appropriations have been made to date for the funding of the cost of energizing street lights in Catatoga III. Although Brizzolara stated he mailed the signed contract back to Commonwealth Edison, R. A. Mentzer of Commonwealth Edison said its files did not contain Brizzolara's signed contract. Therefore, no contract was submitted by Commonwealth Edison to the township board for approval, nor did Commonwealth Edison formally accept the contract.

Brizzolara's term as highway commissioner expired, and he was succeeded on April 27, 1981, by Carlton Wiese. Plaintiff cites no authority for its contention that once a commissioner makes a determination of need for street lighting, and the proposed budget including funds for same is rejected by the township board, that his successor is bound by that prior determination and must again pursue procedural channels to secure an appropriation for such street lighting from the township board. It is true, as plaintiff suggests, that the highway commissioner is both the office and the officer; he is an officer of the township, which is a separate and distinct municipal corporation with no power or authority over roads, and he is a quasi-public corporation having jurisdiction over township roads with the power to do those things necessary to perform the statutory duties enjoined upon it by law. (*Mathew v. Town of Algonquin* (1972), 3 Ill. App. 3d 429, 433; *Roesch-Zeller, Inc. v. Hollembeak* (1955), 5 Ill. App. 2d 94, 107; *Euziere v. Highway Commissioner* (1931), 346 Ill. 131.) However, as noted, the duty to provide street lighting is not mandatory; rather, the highway commissioner shall exercise the power to provide street lighting, "when *in his opinion* [such lighting] is necessary for

the convenience or safety of the public." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 121, par. 6—201.12.) The discretion exercised is an action of the office of highway commissioner; the action required is such as can be performed only by the incumbent of the office. The action of exercising the discretion to provide for street lighting in this case is not a personal one; it devolves upon each successor in office, and no person but one clothed at the time with official authority can perform the act. *Cf. People ex rel. First National Bank v. Czaszewicz* (1920), 295 Ill. 11, 13-14 (*mandamus* will not be awarded to compel an individual to do an official act after the expiration of his term of office where the action required is such as can be performed only by the incumbent of the office, but where the action is personal and does not devolve upon the successor in office, its performance may be compelled by *mandamus*).

The underlying rationale of *Czaszewicz* is applicable to the instant issue. In *Czaszewicz*, the plaintiff sought to accomplish by writ of *mandamus* the payment of public funds held by the former treasurer of the city of West Hammond into the municipal treasury. The treasurer contended *mandamus* could not be awarded to compel an individual to do an official act after the expiration of his term of office. The court determined, however, that the action which was sought to be compelled was personal to the treasurer, and that the writ would lie to compel him to pay over to his successor money retained by him for which, in his report to the city at the termination of his office, he had taken credit for a sum as having been paid out in satisfaction of certain special assessment bonds but which bonds, in fact, had been surreptitiously obtained by him and not paid.

Clearly, the official discretionary act at bar is not of the personal type found in *Czaszewicz*; rather, the duty to perform it is one which devolves upon each successor in office. Brizzolara could not at this time be compelled by *mandamus* to provide street lighting in Catatoga III because he presently is not clothed with "official authority to perform the act." Likewise, Carlton Wiese, as the present highway commissioner, cannot be compelled by writ of *mandamus* to perform in the certain manner requested by plaintiff an official statutory act which is, on its face, to be performed in his own discretion. *Freeman v. Lane* (1985), 129 Ill. App. 3d 1061.

Plaintiff argues in reply that the duty to provide lighting is in the office of the highway commissioner and not in the particular individuals "who may happen to hold that office," and cites in support *Town of Scott v. Artman* (1908), 237 Ill. 394. In *Artman*, the court noted the suit was against the defendants as commissioners of high-

ways and that the duty to open the road in question in that case did not rest on particular persons but, rather, on the commissioners as a body, without regard to who the individual members of that body were. The *Artman* court, however, was not confronted with the exercise of a discretionary duty. The duty to provide lighting in the instant cause arises only after the exercise of the discretionary power which is vested in whoever is then presently clothed with the official authority to perform the act.

Accordingly, we conclude the statutory duty sought to be compelled is discretionary, not ministerial, and may not be compelled by writ of *mandamus.*

We likewise reject plaintiff's contention that its reliance on the affirmative acts and representations of the commissioners gave rise to a duty in the defendants to provide street lights in Catatoga III by contracting with Commonwealth Edison.

Plaintiff claims its good faith reliance on the representations of highway commissioners Hulke and Brizzolara that lights would be provided caused it to make that parallel representation, as well, in its advertising to its potential buyers in Catatoga III; that it entered into a related agreement with Commonwealth Edison for the provision of the lights and associated equipment; and incurred expense in securing easements for such lighting. Plaintiff contends it thus would be inequitable and unjust to permit the defendants now to retract what was previously done, and that the doctrine of estoppel should be applied in order to secure the *mandamus* relief requested. Plaintiff cites in support *New-Mark Builders, Inc. v. City of Aurora* (1967), 90 Ill. App. 2d 98, 102.

In *New-Mark*, plaintiff sought a writ of *mandamus* to compel the defendant to approve its request for the annexation of certain contiguous land. Although annexation is a legislative function resting within the discretion of the legislative branch of the government, the court there decided that the pleadings before it were sufficient to state a cause of action in estoppel against the city, and remanded the cause for trial on the merits. Although defendants' attempt to distinguish *New-Mark*, we believe the case does support plaintiff's contention that *mandamus* on the basis of estoppel may issue.

■■■ It has been held that a party claiming benefit of an estoppel must prove reasonable reliance on the acts or representations of the party sought to be estopped, without knowledge of or convenient means of learning the true facts. (*National Ben Franklin Insurance Co. v. Davidovitch* (1984), 123 Ill. App. 3d 88.) The affirmative action taken by the party to be estopped must be such that it would be un-

just to permit the party to deny what it has done. (*Budka v. Board of Public Safety Commissioners* (1983), 120 Ill. App. 3d. 348.) Generally, a finding of equitable estoppel against a public body is not favored. (*American National Bank & Trust Co. v. Village of Arlington Heights* (1983), 115 Ill. App. 3d 342.) Further, when a governmental body is engaged in a matter of the exercise of its governmental functions, particularly those relating to public revenues, estoppel should only be invoked in extraordinary circumstances. (*Haeflinger v. City of Wood Dale* (1984), 129 Ill. App. 3d 674.) The affirmative acts which induce reliance by a party asserting estoppel must be the acts of the municipality itself, such as legislation by the city council, rather than merely the unauthorized act of a ministerial officer or a ministerial misinterpretation. (*American National Bank & Trust Co. v. Village of Arlington Heights* (1983), 115 Ill. App. 3d 342.) A person who deals with a governmental body takes the risk of having accurately ascertained that he who purports to act for it stays within the bounds of his authority and this is so even though the agent himself may have been unaware of the limitations on his authority. (*Lake Shore Riding Academy, Inc. v. Daley* (1976), 38 Ill. App. 3d 1000.) The asserted reliance must have resulted in prejudice to the party claiming estoppel (*National Boulevard Bank v. Citizens Utilities Co.* (1982), 107 Ill. App. 3d 992), and the conduct of the party seeking the benefit of the doctrine of estoppel may be scrutinized. *Gary-Wheaton Bank v. Meyer* (1984), 130 Ill. App. 3d 87.

The entities here were engaged in matters of the exercise of their governmental functions: each commissioner, in his discretion to determine whether street lighting was necessary in Catatoga III for the convenience and safety of the public (Ill. Rev. Stat. 1983, ch. 121, par. 6—201.12); the township board, in its discretion to approve all or a portion of the tentative budget and appropriation ordinance for the district (Ill. Rev. Stat. 1983, ch. 121, par. 6—501(b); ch. 85, par. 803). Accordingly, estoppel should be invoked only under extraordinary circumstances.

■■ We do not believe the record shows such extraordinary circumstances existed here. Plaintiff's pleadings only minimally allege facts which would establish that it was prejudiced as a result of its reliance on Hulke and Brizzolara's promises that Plato Township would pay for the energizing and maintenance of the lights, or that it was induced to change its position as a result of such reliance. Defendants point out the sample of the Catatoga III advertising provided by plaintiff which included the street light feature was dated May 1980, well in advance of the September 1980 meeting at which

Brizzolara approved the street lights. Although plaintiff argues that Hulke earlier had also made such representations, plaintiff's reliance on Hulke's representations would have been even less reasonable than its reliance on Brizzolara's, since there are no allegations that Hulke ever proceeded with any of the necessary procedural steps to secure such lighting. Plaintiff's reliance on Brizzolara's representations was similarly unreasonable. The record shows the amount of money needed for the energizing of the street lights was specifically known at the time Brizzolara submitted his tentative budget and appropriation ordinance to the township board, yet he "buried" the funds because he knew the town board would not approve the proposed expenditure. In this regard, we note that the *Schulman* decision upon which the trial court relied (*A. S. Schulman Electric Co. v. Village of Fox Lake* (1983), 115 Ill. App. 3d 746) appears to have been decided under section 8—1—7 of the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 8—1—7), which code specifically excludes townships (Ill. Rev. Stat. 1979, ch. 24, par. 1—1—2(1)). However, this court, in *Diversified Computer Services, Inc. v. Town of York* (1982), 104 Ill. App. 3d 852, 856, noted the same considerations underlying the void-for-no-prior-appropriation rule as to contracts of public entities subject to the Illinois Municipal Code, had been applied to other governmental entities as well. Accordingly, this court determined:

"In our view, the requirement of a prior appropriation imposed upon the township by the Illinois Municipal Budget Law (Ill. Rev. Stat. 1979, ch. 85, par. 803) is not simply a precatory bookkeeping procedure suggested by the legislature for guidance in fiscal matters, but, instead, is a condition precedent to the expenditure of town funds and therefore to the validity of the contract in issue. [Citations.]." 104 Ill. App. 3d 852, 858.

Although the validity of the contract is not the issue presented here, the necessity that a prior appropriation have been made before a contract between the township and Commonwealth Edison could be considered valid is clearly relevant to the issue of whether the plaintiff's reliance on the representations of Hulke and Brizzolara was reasonable. We do not believe it was, where the public hearing requirements and approval of the commissioners's tentative budget by the township board are both clearly matters of law and easily ascertainable by the plaintiff.

Plaintiff's entry into the related work agreement with Commonwealth Edison seems in no way to have resulted in prejudice to it. There is no allegation that plaintiff would have contracted differently

or with anyone else for the service as the result of its reliance on the commissioners' representations, and plaintiff's check for the amount of the work agreement was returned to it. The record additionally shows the check would have been returned to the plaintiff sooner except for plaintiff's "reluctance" to have it returned while its "differences" with the township were unsettled. We note here additionally that Commonwealth Edison was not a party to this suit, and it is undisputed that it did not accept the "Supplement to Rate 23 Contract" signed by Brizzolara. As noted previously, a cause of action for a writ of *mandamus* will not lie when the mandate depends upon the cooperation or approval of a third person who is not before the court. (*Moser v. Highway Commissioner* (1983), 114 Ill. App. 3d 137.) Although the township board was made a party to the suit, the tentative budget was subject to its discretion. (Ill. Rev. Stat. 1983, ch. 121, par. 6—501(b); ch. 85, par. 803; *Moser v. Highway Commissioner* (1983), 114 Ill. App. 3d 137, 139.) Moreover, the record suggests the board's rejection of the tentative budget was not arbitrary. The board was concerned that its provision for lights in Catatoga III, when no other subdivision outside of the town of Plato proper had such lights, would create a demand for street lights from existing subdivisions.

Even assuming, *arguendo*, that a writ of *mandamus* would lie to compel the township board to approve the energizing of the lights—thereby limiting the extent of its discretion, as plaintiff suggests, to only the *amount* of the proposed expenditure rather than the expenditure itself—the court's ability to so order necessarily means that it would have likewise ordered the commissioner to exercise his discretion in the certain manner requested by plaintiff which, as discussed above, it may not do.

In sum, we do not find the facts presented in the record here would as a matter of law have supported a judgment for the plaintiff for the *mandamus* relief requested on either theory advanced. Accordingly, we affirm the judgment of the circuit court of Kane County granting summary judgment in favor of the defendants.

Judgment affirmed.

HOPF and STROUSE, JJ., concur.