ELIZABETH SHICK, Plaintiff-Appellee, v. DIXMOOR PARK DISTRICT, Defendant-Appellant (Cook County Clerk, Defendant-Appellee).

First District (5th Division)   No. 1—89—0494

Opinion filed May 26, 1989.

Paul E. Russo, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago, and Dirk Van Beek, of South Holland (Joan S. Cherry and Robert F. Cleary, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE COCCIA delivered the opinion of the court:

Defendant Dixmoor Park District has taken an expedited appeal from the circuit court of Cook County's judgment in this *mandamus* action. The circuit court ordered that the question of the park district's dissolution be submitted to referendum on April 4, 1989, thereby granting the relief requested by plaintiff Elizabeth Shick, a registered voter residing in the district. On March 29, 1989, we entered an order affirming the circuit court. We now explain the reasons for that decision.

The park district has assigned three errors for our review. First, the park district argues that the circuit court erred in certifying the dissolution question to the Cook County clerk, because plaintiff failed to properly serve the petition, which supported the referendum, before the park district board of commissioners. Second, the park district argues that the circuit court erred in designating the election at which the dissolution question was to be submitted, because the court misconstrued both the Park District Code (Ill. Rev. Stat. 1987, ch. 105, par. 1—1 *et seq.*) and the Election Code (Ill. Rev. Stat. 1987, ch. 46, par. 1—1 *et seq.*). Third, the park district argues that the circuit court erred in granting the relief requested by plaintiff, because *mandamus* does not lie when it depends upon the acts of third parties not before the court, in this case the park district commissioners. Before we address the merits of these arguments, the procedural history of this case must be reviewed.

On February 8, 1989, plaintiff filed her complaint, naming the park district and the county clerk as defendants. Plaintiff asked that the circuit court direct the park district to certify the question of its dissolution to the county clerk for submission to the district's legal voters on the April 4, 1989, ballot. Plaintiff alleged that her petition, which included the requisite number of signatures, was delivered to and received by the park district board on December 15, 1988. She further alleged that the board met on that date, and thereafter, with knowledge of the petition, but that it refused to certify the dissolution question, contrary to the Park District Code:

> "§13—1. A park district may be dissolved in the following manner:
>
> Whenever legal voters in the district, equal to two-thirds of the vote cast at the last preceding park district election for the

commissioner who received the greatest number of votes, petition the board of the park district for submission of the question whether the park district will dissolve its incorporation, the board shall (1) certify that question to the proper election officials for submission to the legal voters of the district, (2) designate the election at which the question is to be submitted, and (3) give notice of the referendum as required by the general election law." Ill. Rev. Stat. 1987, ch. 105, par. 13—1.

On February 15, 1989, the park district appeared and filed a motion to dismiss. The objections raised by the park district in the circuit court are similar to the errors it now assigns in this court. Following hearings on the objections, the circuit court denied the park district's motion. On February 22, 1989, the circuit court entered an order finding that the park district was served with the dissolution petition on or about December 15, 1988, and that the requisite number of legal voters in the district petitioned the board. The court ordered that the dissolution question be submitted at the April 4, 1989, election, ruling that it was the park district's duty and obligation to comply with section 13—1 of the Park District Code, including certification of the question and designation of the election. Consequently, the circuit court directed that the park district certify the dissolution question to the county clerk for submission to the district's legal voters on April 4, 1989.

On February 22, 1989, the park district's motion to stay enforcement of the order was denied by the circuit court. Subsequently, the park district board met and decided that it would certify the dissolution question for the November 6, 1989, election, rather than the April 4, 1989, election, if the petition was legally sufficient. Plaintiff and the county clerk then joined in a motion to amend the order entered on February 22, 1989, to provide that the county clerk place the dissolution question directly on the April 4, 1989, ballot, without certification by the park district. The circuit court granted this motion on February 24, 1989.

The park district requested that we stay enforcement of the circuit court's order and that we hear its appeal on an expedited basis. On February 27, 1989, we denied the motion to stay, but allowed expedited appeal, taking the case without oral argument. We subsequently allowed the county clerk to be realigned as an appellee. And, as noted above, we affirmed the judgment of the circuit court in an order entered on March 29, 1989. Additional relevant facts will be considered in the course of our analysis.

## I

■ With the foregoing in mind, we now come to the merits of the park district's arguments. The park district contends that plaintiff failed to properly file the petition submitted in support of the referendum. The park district states that plaintiff's attorney did not personally appear before the board of commissioners, although he knew they would be meeting in the evening of December 15, 1988, and that the board's secretary was not served with the petition. The park district relies upon the following cases, which held that the filing of the documents at issue was legally insufficient: *Daniels v. Cavner* (1949), 404 Ill. 372, 88 N.E.2d 823, *Brelsford v. Community High School District No. 36* (1927), 328 Ill. 27, 159 N.E. 237, *Havens v. Miller* (1981), 102 Ill. App. 3d 558, 429 N.E.2d 1292, and *Frese v. Camferdam* (1979), 76 Ill. App. 3d 68, 394 N.E.2d 845.

However, the facts of those cases are not analogous to the facts of this case. In *Daniels*, nomination papers were filed at the Venice city clerk's residence, rather than at his office. In *Brelsford*, the filing of the subject petition was attempted at the circuit clerk's office, but since it was closed the petition was given to the deputy clerk at the circuit clerk's residence. In *Havens*, economic interest statements were to be filed at the county clerk's office, but they were filed instead at the school board's office. In *Frese*, absentee voters failed to mail their ballots to, or personally deliver them at, the township clerk's office. Thus, in each of these cases an office was available for filing the documents in question.

Here, in contrast, the circuit court found that the park district has no permanent business office, that it relies upon a post office box to receive correspondence, and that it conducts business one evening per month at board meetings. The circuit court also found that plaintiff's counsel delivered the petition to an unidentified young man at the Rosa Parks Middle School, where a park district recreational program was located. He, in turn, delivered the petition to a park district employee, and it was eventually delivered to the park district's recreation secretary. The minutes of the December 15, 1988, meeting of the board of commissioners reflect that they examined the petition, along with a letter from plaintiff's attorney dated December 12, 1988, which was read by the board's president. The letter was received at the board's designated location for correspondence, and it advised the board of the petition's existence and the request for certification. The petition was likewise considered at subsequent board meetings. On January 23,1989, the board voted to consider the petition as invalid, because the petition's proponents had not personally addressed them

at a meeting. This decision was confirmed in a letter from the park district's counsel to plaintiff's counsel dated January 24, 1989, in which the former stated that the petition had not been properly served since it was received by a part-time park district secretary, rather than the board's secretary. But the circuit court found that the board had not adopted rules or regulations concerning the filing of official documents and that no statute governed such procedures.

Section 13—1 of the Park District Code, set forth above, required that plaintiff's dissolution petition be filed with the park district board. The park district's objection assumes the existence of standards for judging the sufficiency of filing. But the park district has failed to draw our attention to any standards. And the park district has not challenged the circuit court's finding that no standards exist, whether in the form of a statute or park district rules and regulations. Our own research indicates that this appears to be a case of first impression under the Code. Given these facts, we conclude that plaintiff's actions, which clearly gave the park district actual notice of the petition and its contents in a timely fashion, satisfied section 13—1 of the Park District Code. Therefore, the circuit court did not err in ruling that the petition was served properly.

## II

■ In addition, the park district contends that the circuit court erred by designating the election at which the dissolution question was to be submitted. The park district apparently maintains that the circuit court misconstrued both the Election Code and the Park District Code. In the first place, the park district asserts that the legislature, by enacting the Election Code, intended that dissolution petitions be subject to challenge. But the park district complains that it has had no opportunity to challenge plaintiff's petition. In the second place, based on the authority of *In re Organization of Greater Algonquin Park District* (1982), 103 Ill. App. 3d 1056, 432 N.E.2d 306, the park district asserts that it has discretion regarding designation of the election at which the dissolution question is to be submitted. From this it follows, reasons the park district, that *mandamus* does not lie, because discretionary acts cannot be compelled through such a remedy.

The park district correctly states that the legislature intended that dissolution petitions be subject to challenge. For example, objections to petitions may be grounded upon the heading or certification requirements of section 28—3 of the Election Code. (See Ill. Rev. Stat. 1987, ch. 46, par. 28—3.) The county clerk points out, however,

that objections to plaintiff's dissolution petition would not be heard by the park district board, but rather by the County Officers Electoral Board. (See Ill. Rev. Stat. 1987, ch. 46, pars. 28—4, 10—9.) Section 28—4 of the Election Code provides that the electoral board which would hear objections to petitions for public questions, such as plaintiff's, is the same electoral board which would hear objections to nominating petitions of candidates for office in the political subdivision where the question is being submitted. And the Election Code's section 10—9 tells us that the appropriate electoral board for the Dixmoor Park District is the County Officers Electoral Board, which includes the county clerk, the circuit court clerk, and the State's Attorney.

Moreover, the park district has cited no authority in support of the proposition that its board is authorized to challenge plaintiff's petition. The county clerk, although conceding that the individual commissioners of the park district can challenge the dissolution petition as registered voters, denies that the park district, as such, can challenge plaintiff's petition. The county clerk instructs us that the last day for filing objections to the subject petition was January 23, 1989. (See Ill. Rev. Stat. 1987, ch. 46, par. 10—8.) That is, the county clerk argues, any voter wishing to object had until five business days after the last day for filing petitions to file objections with the County Officers Electoral Board; for the April 4, 1989, election, the last day to file petitions was January 17, 1989. Based on this fact, January 23, 1989, was the last day to file petition objections with the electoral board. The park district did not file objections until February 21, 1989, when several commissioners submitted affidavits attacking plaintiff's petition. Section 10—8 of the Election Code also mandates that plaintiff's petition is deemed valid, by operation of law, since it was not challenged in a timely manner. Thus, the park district's contention that there was no opportunity to challenge plaintiff's petition is without merit.

■ The park district further contends that section 13—1 of the Park District Code and section 28—2 of the Election Code are in conflict; therefore, following *Algonquin*, the more general provisions of the Election Code give way to the more specific provisions of the Park District Code. But we think *Algonquin* does not stand for the proposition articulated by the park district. First, at issue in *Algonquin* was the applicability of the Election Code's section 28—3, which establishes heading and certification requirements for petitions submitted in support of referenda. (103 Ill. App. 3d at 1063, 432 N.E.2d at 311.) In contrast, section 28—2 of the Election Code (Ill. Rev. Stat.

1987, ch. 46, par. 28—2) is at issue here. Section 28—2 states in part:
"If a petition initiating a public question does not specify a regularly scheduled election, the public question shall be submitted to referendum at the next regular election occurring not less than 78 days after the filing of the petition ***." (Ill. Rev. Stat. 1987, ch. 46, par. 28—2.)

Consequently, *Algonquin* is distinguishable from our case. Second, the reasoning of the second district in *Algonquin* has been rejected by the fourth district in *Adsit v. Sanders* (1987), 157 Ill. App. 3d 416, 510 N.E.2d 547, as well as by this court. (See *In re Petition to Form a New Park District Coterminous With the Village of Maywood, Illinois, to Supercede the Existing Central Area and West Maywood Park Districts* (1989), 182 Ill. App. 3d 973.) Thus, *Algonquin* is not precedent for the park district's contention that the Election Code and the Park District Code are in conflict.

More importantly, we are of the opinion that the plain language of section 13—1 of the Park District Code and section 28—2 of the Election Code do not conflict. Section 13—1 requires that the park district "*shall *** designate the election at which the question is to be submitted.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 105, par. 13—1.) Turning to article 28 of the Election Code, which governs the submission of public policy questions, we learn from section 28—2 that the park district should have designated the April 4, 1989, election. That is, as the county clerk observes, since plaintiff's petition was served on December 15, 1988, the April 4, 1989, election was "the next regular election occurring not less than 78 days after the filing of the petition" (Ill. Rev. Stat. 1987, ch. 46, par. 28—2); April 4, 1989, is not less than 78 days after December 15, 1988. Section 13—1 tells the park district that it must designate an election, and section 28—2 tells it which election to designate. In light of these statutes, the park district should have designated the April 4, 1989, election, rather than the November 6, 1989, election. Because the park district had no discretion regarding which election to designate, we need not reach its claim that discretion cannot be compelled in a *mandamus* action.

It is not solely the plain language of these statutes which leads us to conclude that the park district has no discretion concerning election designation. This court has previously invoked the fundamental principle of statutory construction that when legislative intent is in question, the consequences resulting from various interpretations must be considered. (*People ex rel. Holland v. Edelman* (1975), 27 Ill. App. 3d 793, 796, 327 N.E.2d 338, 340.) Were we to interpret section 13—1 of the Park District Code as investing the park district with discretion

regarding election designation, the consequences for the Illinois electorate would be severe. Reason and experience teach that few park district boards would miss an opportunity to delay their dissolution. Boards might attempt to postpone, perhaps indefinitely, submitting dissolution questions to referenda by designating elections far in the future. Therefore, we hold that when a petition submitted in support of a dissolution question is properly served, timely, and valid, a park district must follow the dictates of section 28—2 of the Election Code in designating an election. Any other construction of section 13—1 of the Park District Code would, in effect, give park district boards veto power over dissolution referenda. Compare *Havens*, 102 Ill. App. 3d at 565, 429 N.E.2d at 1297 (appellate court refuses to give chairmen of various electoral boards absolute veto power over objections to nominating petitions).

## III

■ Finally, the park district contends that *mandamus* does not lie. In support of this contention, the park district relies upon *Burnridge Brothers Almora Heights, Inc. v. Wiese* (1986), 142 Ill. App. 3d 486, 491 N.E.2d 841. The park district correctly observes that the court in *Burnridge* stated:

"Further, it has been held that the writ [of *mandamus*] will not lie when the mandate depends upon the cooperation or approval of a third person who is not before the court. [Citation.]" (142 Ill. App. 3d at 490-91, 491 N.E.2d at 846.)

Since the commissioners must designate the referendum date, and since they were not named as defendants by plaintiff, the park district concludes that *mandamus* does not lie.

The park district, however, neglected to draw our attention to a sentence in *Burnridge* which immediately follows the general rule quoted in the preceding paragraph, and which states an exception that answers the objection raised by the district:

"If the cooperation of the third person is a matter of duty, however, and the third person is a public officer, the law will presume that he will do his duty, and the writ [of *mandamus*] will lie. [Citation.]" (142 Ill. App. 3d at 491, 491 N.E.2d at 846.)

In the circuit court and in this court, the park district has conceded that its commissioners are bound to perform the duties enumerated in section 13—1 of the Park District Code, set forth above. The plain language of section 13—1 leads us to the same conclusion. And the park district does not deny, nor could it in good faith, that its commissioners are public officers. Accordingly, we reject the park district's

claim that *mandamus* does not lie.

For the foregoing reasons the judgment of the circuit court, ordering that the question of the park district's dissolution be placed on the April 4, 1989, ballot, is affirmed.

Affirmed.

MURRAY, P.J., and PINCHAM, J., concur.