*In re* FORMATION OF THE MAYWOOD UNIFIED PARK DISTRICT (Maywood Park District, Objector-Appellant, v. Grady Rivers *et al.*, Petitioners-Appellees (Stanley T. Kusper, Jr., as County Clerk of Cook County, Illinois, Respondent)).

First District (5th Division) No. 1—89—2553

Opinion filed February 16, 1990.

732

Gregory A. Friedman, Charlene L. Holtz, and Evdoxia Beroukas, all of Friedman & Holtz, P.C., of Chicago, for appellant.

Mathias W. Delort, of Odelson & Sterk, Ltd., of Evergreen Park, for appellees.

JUSTICE MURRAY delivered the opinion of the court:

Objector-appellant, Maywood Park District (Maywood), appeals from an order of the circuit court of Cook County certifying a petition filed by petitioner-appellee, Maywood Unified Park District (Unified), seeking to submit for referendum at the November 7, 1989, election the question of whether to form a new park district within boundaries coterminous with those of the Village of Maywood and, in so doing, to supersede the West Maywood and Central Area Park Districts. (Objector Maywood was formed as a result of consolidation by ordinances of the West Maywood and Central Area Park Districts. Petitioner Unified was formed by a group of citizens calling itself "Citizens for a Maywood Unified Park District.") Maywood seeks reversal of the trial court's order, arguing: (1) that the court "erred in certifying the petition to supercede [sic] existing park districts and form a new park district"; (2) the court lacked jurisdiction to certify the question for referendum because the petition which granted such jurisdiction was invalid as a matter of law; (3) the court erred in holding that it lacked

standing to object to the petition; and (4) the court erred in failing to take judicial notice of consolidation ordinances merging the West Maywood and Central Area Park Districts.

The undisputed facts are as follows. On June 19, 1989, the boards of West Maywood and Central Area Park Districts passed a resolution of their intent to consolidate both park districts into one. On June 28, Unified filed a notice of intent to form a new park district to include West Maywood and Central Area Park Districts, as well as the remainder of the Village of Maywood. On June 29, West Maywood and Central Area Park Districts passed ordinances consolidating themselves into the Maywood Park District.

Subsequent to the consolidation of the West Maywood and Central Area Park Districts, Unified circulated its petition. The petition, entitled "IN RE; FORMATION OF THE MAYWOOD UNIFIED PARK DISTRICT," was filed with the circuit court on July 21. In support thereof, three separate petition sheets were submitted; one set of signatures of legal voters residing in the West Maywood Park District, a second set of signatures of legal voters residing in the Central Area Park District, and a third set of signatures of voters residing in the area within the Village of Maywood not a part of or situated within either park district. The heading on the petition sheets contained the following question:

> "Shall a new park district, to be known as the Maywood Unified Park District, be organized to completely supercede [sic] and replace the existing Central Area Park District and the West Maywood Park District and have corporate boundaries that are the same as the corporate boundaries of the Village of Maywood, Illinois?"

On August 18, Maywood filed a motion to strike and dismiss Unified's petition on the ground that it did not meet the requirements of section 2—2.1 of the Park District Code (Ill. Rev. Stat. 1987, ch. 105, par. 2—2.1). Maywood argued that pursuant to section 2—2.1, two or more park districts must exist within a municipality's boundaries prior to seeking a petition to have the question of formation of a park district coterminous with the municipal boundaries certified for referendum, which was not the case at the time Unified filed its petition; *only one* park district existed, *i.e.*, Maywood, which was formed by consolidating the West Maywood and Central Area Park Districts. Maywood further alleged that Unified's petition heading was inappropriate and improper in that it "misrepresented the facts to the voters," since the West Maywood and Central Area Park Districts did not exist at the time Unified's petition was circulated or at the time

of hearing in the trial court; the West Maywood and Central Area Park Districts had been "consolidated by ordinances almost a month prior to the circulation of the petition, which were attached to Maywood's objection to Unified's petition. On August 28, Maywood filed an additional objection stating as its grounds that the trial court set the date for public hearing on the petition on September 11, four days after the last date for certification of Unified's petition.

On September 6, Unified filed a motion to strike and dismiss Maywood's objections as insufficient in law and in fact. On the same date, Unified's counsel filed a motion for leave to intervene and an application for leave to file a petition in *quo warranto* on behalf of Grady Rivers, Jr., a candidate running for Unified's board, a motion to join Stanley T. Kusper, Jr., as a necessary party-respondent, and for certain injunctive relief. On September 11, Unified filed a memorandum in support of its motion to strike and dismiss Maywood's objections, arguing that Maywood's objections were filed after the statutory deadline of the Election Code (see Ill. Rev. Stat. 1987, ch. 46, par. 10—8), that the filing of its petition superseded any attempt to consolidate by the two "old" park districts, and that Maywood was not a proper objector pursuant to section 10—8 of the Election Code (Ill. Rev. Stat. 1987, ch. 46, par. 10—8) because it is not a registered voter, it was not properly formed and, in any event, park districts have no statutory authority to object to consolidation petitions.

On September 11, the trial court entered an order denying Maywood's additional objections, granting Unified leave to file *instanter* its motion to strike and dismiss Maywood's objections to the petition and memorandum in support thereof, granting Maywood time within which to file a reply, and setting the next hearing for September 15. The court also granted Unified's motion to add Stanley T. Kusper, Jr., as an additional party, enjoined Kusper from issuing ballots for the Village of Maywood until the court disposed of Maywood's objections to Unified's petition, and entered and continued Rivers' motion for leave to intervene and to file a complaint in *quo warranto*.

On September 14, Maywood filed its response to Unified's memorandum in opposition to strike and dismiss based on its assertion that Unified's petition was improper and, accordingly, the trial court lacked jurisdiction over the matter. Maywood further argued in support of its lack of jurisdiction assertion that section 10—8 of the Election Code (Ill. Rev. Stat. 1987, ch. 46, par. 10—8) "did not control the Petition but that Section 28—4 of the Election Code did," which section contains no time limitations for filing objections and no limitations as to who could file objections (see Ill. Rev. Stat. 1987, ch. 46,

par. 28—4). Lastly, Maywood contended that the filing of the petition was an illegal attempt to nullify the completed consolidation of the two former park districts (West Maywood and Central Area), because those park districts had been consolidated by ordinances properly passed almost one month before the filing of Unified's petition.

On September 15, Unified filed a response memorandum in support of its motion to strike and dismiss Maywood's objections arguing that the merger of the West Maywood and Central Area Park Districts was ineffectual because Unified had published its notice of intent to file its petition on June 28, 1989, and the consolidation ordinances were not passed until June 29.

In response, Maywood advised the court that the West Maywood and Central Area Park Districts met on June 19 and passed a joint resolution which stated their intent to consolidate. Grady Rivers, Jr., one of the petitioners by intervention, was present at the meeting. Unified's last argument to the court was that even if the ordinances were timely passed, they were illegal because they failed to receive a two-thirds vote of all the board commissioners.

In an order entered by the trial court on September 15, the court overruled the objections of Maywood, found that Maywood had no standing to file objections pursuant to section 10—8 of the Election Code (see Ill. Rev. Stat. 1987, ch. 46, par. 10—8), sustained Unified's motion to strike and dismiss Maywood's objections, dissolved the injunctive order against Kusper, found that the petition met the requirements of the Park District Code (see Ill. Rev. Stat. 1987, ch. 105, par. 1—1 *et seq.*) and general election law, ordered the question as to whether to form a new park district submitted to referendum, ordered the clerk of the circuit court to certify the names of the appropriate candidates granted Grady Rivers, Jr., leave to file his complaint in *quo warranto*, granted Maywood leave to file an answer or plead to the complaint, and found that the order was final and appealable. It is from this order that Maywood appeals.

For the reasons set forth below, we reverse and remand this matter for further proceedings.

■■ We first find, as Maywood argues, that the trial court erroneously applied section 10—8, instead of section 28—4, of the Election Code (Ill. Rev. Stat. 1987, ch. 46, pars. 10—8, 28—4) in dismissing Maywood's objections based upon lack of standing. Section 10—8, which is entitled "Objections to nomination papers, public question petitions and constitutional amendment petitions," provides, in pertinent part:

"*Any legal voter* of the political subdivision or district in

which the candidate or public question is to be voted on, or *any legal voter* in the State in the case of a proposed amendment to Article IV of the constitution or an advisory public question to be submitted to the voters of the entire State, *having objections* to any certificate of nomination or nomination papers or petitions filed, *shall file an objector's petition* together with a copy thereof *in the principal office or the permanent branch office of the State Board of Elections, or in the office of the election authority or local election official* with whom the certificate of nomination, nomination papers or petitions are on file. In the case of nomination papers or certificates of nomination, *the State Board of Elections, election authority or local election official* shall note the day and hour upon which such *objector's petition* is filed \*\*\*. In the case of objections to a petition for a proposed amendment to Article IV of the Constitution or for an advisory public question to be submitted to the voters of the entire State, *the State Board of Elections* shall note the day and hour upon which such *objector's petition* is filed \*\*\*. In the case of *objections to a petition for a public question*, to be submitted to the voters of a political subdivision, or district thereof, the *election authority or local election official* with whom such petition is filed shall note the day and hour upon which such *objector's petition* was filed \*\*\*.

*The objector's petition* shall give the objector's name and residence address, and shall state fully the nature of the objections to the certificate of nomination or nomination papers or petitions in question, *and shall state the interest* of the objector and shall state what relief is requested of the *electoral board*.

*The provisions of this Section and of Sections 10—9, 10—10 and 10—10.1* shall also apply to and govern objections to petitions for nomination filed under Article 7 or Article 8, \*\*\* *and also apply to and govern petitions for the submission of public questions under Article 28.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 46, par. 10—8.)

Section 10—9 of the Election Code is entitled "Electoral boards—Hearing on objections," which designates the various electoral boards for the purpose of hearing and passing upon an objector's petition as described in section 10—8. (Ill. Rev. Stat. 1987, ch. 46, pars. 10—8, 10—9.) Section 10—10 is entitled "Notice of objections—Notice of hearings—Subpoenas—Rules of procedure—Certified copy of ruling" and provides for the procedures to be followed by the appropriate *election authorities* in processing objections. (Ill. Rev. Stat. 1987, ch.

46, par. 10—10.) Section 10—10.1 is entitled "Decision of electoral board—Judicial review" and provides the procedure for review to be taken by a candidate or objector after an adverse decision by an *electoral board*, first with the State Board of Elections and then, if another adverse decision is rendered, with the circuit court in accordance with the provisions of the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 *et seq.*). Ill. Rev. Stat. 1987, ch. 46, par. 10—10.1.

■ On the other hand, section 28—4 of the Election Code, which is entitled "Objections to petitions—Hearing—Notice," provides, in pertinent part:

> "*The provisions of Sections 10—8 through 10—10.1* relating to objections to nominating petitions, hearings on objections, and judicial review, shall apply to and govern, insofar as may be practicable, objections to petitions for the submission of questions of public policy *required to be filed with local election officials and election authorities,* and to petitions for proposed Constitutional amendments and statewide advisory public questions, *required to be filed with the State Board of Elections* \* \* \*
> \* \* \*
> Objections to petitions for the submission of public questions *which are required by law to be filed with the circuit court* shall be presented to and heard by the court with which such petitions are filed. In such cases, *unless otherwise provided in the statute authorizing the public question,* the court shall \* \* \* conduct such hearing and entertain all objections as may be properly presented on or before such hearing date *in the manner as provided in Article 10* [*Ill. Rev. Stat. 1987, ch. 46, par. 10—1 et seq.* for the conduct of proceedings before electoral boards, *insofar as practicable* \* \* \*." (Emphasis added) Ill. Rev. Stat. 1987, ch. 46, par. 28—4.

In comparing the above-cited Election Code provisions, we note that section 10—8 clearly requires that an objector to a public question submitted to be voted on must be a "legal voter." However, as Maywood argues, section 10—8 pertains to objections *required to be filed with an electoral board,* whereas a petition for the formation of a park district is *required to be filed with the circuit court* pursuant to the Park District Code (Ill. Rev. Stat. 1987, ch. 105, par. 1—1 *et seq.*) in conjunction with the provisions of section 28—4 of the Election Code. We further observe that although section 10—8 provides that it and sections 10—9 through 10—10.1 shall govern article 28, and in fact that provision is specifically repeated in the first para-

graph of section 28—4, we find it odd that the same provision was not specifically set out in the paragraph thereunder concerning petitions for the submission of public questions required by law to be filed with the circuit court. Instead, the legislature appears to have chosen to apply the governance of article 10 broadly to situations where the petitions are required to be filed with the circuit court, by use of the limiting phrase of "insofar as practicable" and by not specifying individual sections of the Election Code as being applicable, such as the "legal voter status" required by section 10—8.

■ In light of the foregoing, we believe, as did the court in *In re Organization of Greater Algonquin District* (1982), 103 Ill. App. 3d 1056, that application of section 10—8 to determine a party's standing in proceedings to form a park district would be impracticable. In *Algonquin*, the petitioners challenged the standing of certain objectors; the Village of Lake Hills, whose objection was based on its claim that portions of the proposed park district were already part of the village or in the process of being annexed, as well as owners of legal title of real property or beneficiaries of trusts owning real property in the area. In holding that the respondent-objectors had standing, the *Algonquin* court specifically stated:

> "Considering the differences between organization of a park district and nomination of persons for public office under the Election Code, it would appear that the *interest necessary to file objections to a petition to organize a park district should not be restricted to only 'legal voters.'* (See, *e.g., In re Organization of Byron Park District* (1978), 67 Ill. App. 3d 61, 385 N.E.2d 67.) We find here that the statements of interest contained in the objections are sufficient to entitle all the objectors to object to the formation of the district." (Emphasis added.) 103 Ill. App. 3d at 1065.

We further briefly note that *Shick v. Dixmoor Park District* (1989), 184 Ill. App. 3d 513, upon which Unified relies in support of its argument that Maywood lacked standing, is distinguishable from the situation before us. In *Shick*, where a voter filed a petition with the Cook County Officers Electoral Board for submission of a question whether the Dixmoor Park District should be dissolved, the court *observed*:

> "[T]he park district has cited no authority in support of the proposition that its board is authorized to challenge plaintiff's petition. The county clerk, although conceding that the individual commissioners of the park district can challenge the dissolution petition as registered voters, denies that the park district,

as such, can challenge plaintiff's petition." (184 Ill. App. 3d at 518.)

Unlike the situation here, the petition at issue in *Shick* was *required to be filed with an electoral board*. We further note that the above-quoted excerpt is merely an *observation* by the court; whether the Dixmoor Park District or its board had standing was not addressed by the court, as indicated by the remainder of the paragraph, which reads as follows:

"The county clerk instructs us that the last day for filing objections to the subject petition was January 23, 1989. [Citation.] That is, the county clerk argues, any voter wishing to object had until five business days after the last day for filing petitions to file objections with the County Officers Electoral Board; for the April 4, 1989, election, the last day to file petitions was January 17, 1989. Based on this fact, January 23, 1989, was the last day to file petition objections with the electoral board. The park district did not file objections until February 21, 1989, when several commissioners submitted affidavits attacking plaintiff's petition. Section 10—8 of the Election Code also mandates that plaintiff's petition is deemed valid, by operation of law, since it was not challenged in a timely manner. Thus, the park district's contention that there was no opportunity to challenge plaintiff's petition is without merit." (184 Ill. App. 3d at 518.)

*Shick*, therefore, is not support for Unified's position.

We also believe that the Park District Code (Ill. Rev. Stat. 1987, ch. 105, par. 1—1 *et seq.*) supports our position. Although no definite provision exists concerning the required status of parties who desire to object to a petition to submit the question of the formation of a park district to the voters, we find that to limit them to "legal voters" would contravene a park district's general corporate powers "to sue and be sued" and its general obligation to do any and all acts necessary for its corporate purposes and protection of the park district. See Ill. Rev. Stat. 1987, ch. 105, par. 8—1.

■ In light of the foregoing, we therefore hold that Maywood had standing, if it constituted a properly formed park district, to object to Unified's petition. Since the validity of Maywood's existence has been challenged in a *quo warranto* complaint filed by Grady Rivers, Jr., a candidate for the office of commissioner of the Maywood Unified Park District, against the commissioners of Maywood Park District, which is pending in the trial court, we do not address any other issue raised by the parties here. This matter must be remanded

to the trial court for proceedings on the *quo warranto* complaint to determine the validity of Maywood's existence as a properly formed park district and, if validly formed, the trial court must find that Maywood had standing to object and it must conduct further proceedings on the issues raised by the parties to determine whether any vote on the referendum question should be declared valid or invalid.

Reversed and remanded.

LORENZ and GORDON, JJ., concur.